UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CBST ACQUISITION, LLC | : | |
| | : | |
| Plaintiff, | : | |
| Vs. | : | |
| | : | |
| | : | Case No._____ |
| PNC BANK, N.A. | : | |
| | : | |
| And | : | |
| | : | |
| NATIONAL CITY BANK nka | : | |
| PNC FINANCIAL SERVICES GROUP, INC, | : | |
| | : | |
| Defendants. | : | **COMPLAINT FOR DEFAMATION,** |
| | : | **BREACH OF CONTRACT, TORTIOUS** |
| | : | **INTERFERENCE, FRAUDULENT** |
| | : | **CONCEALMENT, DECLARATORY AND** |
| | : | **ARTICLE III RELIEF, AND OTHER** |
| | : | **TORTIOUS CONDUCT** |
| | : | |
| | : | **(DEMAND FOR JURY TRIAL)** |

**COMES NOW** Plaintiff, CBST Acquisition LLC ("CBST"), thru its undersigned counsel, in the above styled and numbered civil action who, for good and sufficient causes of action, files this complaint against Defendants PNC Bank, National Association and National City Bank nka PNC Financial Services Inc, (Defendants hereinafter collectively referred to as "PNC" or "PNC Bank") in this court. CBST herein alleges, avers and gives notice of the following:

### EXECUTIVE SUMMARY

1)    CBST recently suffered an injury-in-fact as a result of false claims made by PNC in the public domain concerning the origination of purported debts by CBST. An actual and real controversy exists between the parties regarding the purported debts.

2) CBST's actual injury-in-fact is traceable to PNC. CBST seeks redress to correct and stop the injury by removing PNC's false claims from the public domain pursuant to Article III of the Constitution.

3) PNC breached its $250,000 contract originated with CBST in 2003 by failing to apply payments made by CBST at the time such payments were made in September and October 2004.

4) PNC also breached the $250,000 contract by unilaterally changing the principal amount of the contract to $4,000,000 without CBST's consent.

5) According to an internal PNC Bank email, PNC Bank executives restructured transactions related to CBST "to elude the appearance of any impropriety."

6) As a result of its wrongdoing, the Wall Street Journal reported that PNC had entered a confidential memorandum of understanding with federal regulators, effectively putting the bank on probation.

7) Per the U.S. Attorney, PNC sent CBST a Demand Letter in the amount of $4,000,000. PNC's Demand Letter, authored by an attorney for PNC, is absolutely and unequivocally misleading, bogus and fraudulent.

8) On February 23, 2018, PNC publicized a statement, that it was "induced by fraud" by CBST, PNC's statement is slanderous, libelous and/or defamatory in nature against CBST and harms CBST's name in the marketplace.

9) As filed in a judicial proceeding in Dayton, Ohio, PNC additionally purports that CBST has an outstanding debt in the approximate amount of $18.3 million. PNC Bank currently

2

seeks to collect purported debts in the approximate amounts of $18.3 million and $4 million from CBST. A real and actual controversy exists regarding the purported debts.

10) On February 2018, CBST discovered that PNC Bank created fraudulent contractual documents with the purposeful intent of embarrassing and harassing CBST in the marketplace regarding an outstanding $18.3 million debt allegedly owed by CBST. PNC intentionally interfered with CBST's business relationships with Fifth Third Bank and other Fortune 500 companies.

11) PNC Bank recruited and conspired with named and unnamed, private and state actors to conceal the existence of an $18.3 million debt allegedly owed by CBST.

12) PNC Bank abused the legal process by filing a fake and fraudulent $18.3 million proof of claim during a judicial proceeding attempting to pervert the process and cause the court to do something which the court is not empowered to do.

13) In January 2017, the U.S. Treasury Department confirmed the "only debt is file" between CBST and PNC is the $250,000 Note.

14) As a direct and proximate consequence of PNC's wrongful, egregious and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## JURISDICTION AND PARTIES

15) The Plaintiff, CBST Acquisition LLC, is an Ohio Limited Liability Company with its principal place of business in the Southern District of Ohio.

16) Defendant PNC Financial Services Group, Inc. acquired or merged with National City Bank and National City Commercial Capital Corporation. Defendant PNC Financial Services Group, Inc. has its main office and principal place of business in the State of Pennsylvania. Upon information and belief, PNC Financial Services Group Inc. is authorized to do business within the State of Ohio.

17) Defendant PNC Bank N.A. is a national banking association with its main office and principal place of business in the State of Pennsylvania. Upon information and belief, PNC Bank N.A. is authorized to do business within the State of Ohio.

18) Defendant PNC Financial Services Group Inc. is the corporate parent of Defendant PNC Bank N.A. PNC Bank N.A. is the proper party to this litigation.

19) Jurisdiction of this court is invoked pursuant to Article III of the Constitution. CBST suffered an actual injury-in-fact that is traceable to false claims by PNC regarding alleged debts. CBST seeks immediate redress to correct the same. A controversy exists between the parties regarding the origination of the alleged debts.

20) This court has jurisdiction pursuant to 28 USC §1332, diversity of citizenship. The amount in controversy exceeds $75,000. This court also has jurisdiction pursuant to 28 USC §§ 1331 and 1367.

21) The jurisdiction of this Court is invoked pursuant to 28 USC §§ 2201/2202, Federal Declaratory Judgment Act. CBST seeks injunctive and declaratory relief.

22) This Court also has jurisdiction pursuant to Title 42 USC §§ 1981, 1985 and 1986.

23) The acts, actions and/or omissions giving rise to the causes of action occurred in substantial part within the geographical boundaries of this judicial district. Thus, venue is proper in the District Court pursuant to USC §§ 1391(b) and (c).

## FACTS

24) CBST recently sought financing for its software development and other technology projects, and general business operations. Unfortunately, CBST's request was denied.

25) The reason for the denial was based on PNC's false claims in the public domain regarding outstanding debts allegedly originated and owed by CBST. As a result of the denial, CBST suffered an injury-in-fact as CBST is unable to further advance its projects and operations in the marketplace.

26) CBST's injury is imminent, actual and traceable to the false and public claims by PNC. CBST seeks redress to correct pursuant to Article III of the Constitution.

27) CBST originated and entered into a contract with Provident Bank in 2003 in the amount of $250,000. *(See Exhibit A – "Note")* The Note is subordinate to all contracts between CBST and Fifth Third Bank.

28) Defendant National City Bank acquired the assets, notes and/or loans of Provident Bank on or about 2004. Subsequently, Defendant PNC Bank, via a stock purchase, acquired the assets, notes and/or loans of Defendant National City Bank on or about 2008.

29) To induce CBST into entering into the contract, PNC represented to CBST that is was a bank that CBST could trust as it did not conduct itself in fraudulent ways. PNC represented that it was transparent, acted with reasonable care and that CBST could rely on PNC not

supplying false information regarding its business activities. PNC represented that it would always be truthful with CBST and not act in ways that would be harmful to CBST.

30) PNC, to its detriment, suffers economic losses because it justifiably relied on the representations being made by PNC as the basis for entering into the contract. PNC negligently misrepresented its business and professional conduct in order to induce CBST to enter into the contract.

31) Pursuant to PNC, the $250,000 Note is the "only debt on file" between the parties. *(Exhibit B)* The U.S. Department of the Treasury, Office of the Comptroller of the Currency confirmed the same on January 30, 2017. *(See Exhibit C)*

32) Both PNC and this court previously confirmed that CBST is a party to the $250,000 contract with PNC. *(See Case No. 1:17-CV-508, Docket Nos. 22 and 55)*

33) On about September 2004 and October 2004, CBST made payments to PNC on the Note. The payments were made by CBST from its Fifth Third Bank account.

34) The terms of the Note obliged PNC to apply payments made by CBST toward the Note at the time the payments were made. CBST was performing according to the terms of the contract at the time of the breach.

35) In multiple ways, PNC breached the terms of the contract and its duty to deal with CBST in a fair and good faith manner.

36) First, PNC breached the terms of the contract and/or its duty to CBST by failing to apply payments made by CBST to the Note at the time the payments were made in September and October 2004.

37) An Obligation Summary, provided by PNC Record Custodian Autumn Drdek under penalty of perjury, confirms PNC never applied payments made by CBST toward the Note. Despite payments being made in September and October of 2004, the outstanding principal amount remained equal to the original principal amount due of $250,000 as originated on December 31, 2003. *(See Exhibit D)*

38) Acting with the intent to breach, PNC Bank executives restructured CBST transactions "to elude the appearance of any impropriety." *(See Exhibit E)*

39) As a result of PNC's wrongdoing, the Wall Street Journal reported on June 6, 2008 that PNC entered a confidential memorandum of understanding with federal regulators, effectively putting the bank on probation for its wrongdoing.

40) Upon belief, PNC restructured transactions and applied CBST payments to an account in the name of Butler County, Ohio without CBST's consent.

41) PNC violated its own internal standard and policies by applying CBST payments to the account of someone other than CBST in order to "elude improprieties."

42) CBST never approved, consented nor authorized its payments to be applied to any account other than CBST's $250,000 Note.

43) Second, PNC also breached the terms of the contract by changing the principal amount of the Note to $4,000,000 without the consent of CBST. Such breach occurred on or about December 2004.

44) As confirmed by public records, PNC informed the U.S. Attorney that the amount of the Note was $4,000,000 and that PNC sent a Demand Letter seeking payment regarding the same.

45) PNC intentionally misled the US Attorney regarding the existence of a $4,000,000 debt in order to economically harm CBST's name in the marketplace and to prevent CBST from growing its business and serving its customers.

46) PNC had motive to harm CBST because CBST was a competitor to one of PNC's major customers.

47) PNC breached its duty to deal with CBST in a fair, honest and good faith manner by failing to apply the payments made by CBST toward the outstanding $250,000 Note at the time the payments were made in September and October 2004.

48) PNC also breached its duty to deal with CBST in a fair, honest and good faith manner by unilaterally changing the principal amount of the Note to $4,000,000 and sending CBST a Demand Letter in the amount of $4,000,000.

49) Ohio Rev. Code § 2305.06 provides for a fifteen-year statute of limitation for breach of a written contract between parties in Ohio.

50) Separate from the $250,000 Note, PNC also claims CBST entered into another contract with PNC in the amount of $18.3 million. According to the public filing by the U.S. Trustee, such contract was entered into in August 2006. *(See Exhibit F)*

51) PNC currently seeks to collect payment in the approximate amount of $18.3 million from CBST related to the contract. Thus, a controversy exists.

52) In a judicial proceeding in Dayton Ohio in Case No. 06-30086 ("judicial proceeding"), CBST discovered for the first time on February 2018 that PNC publicly and falsely claims CBST has an outstanding debt in the amount of $18.3 million.

53) PNC's $18.3 million claim is a fraud and injurious to CBST's name in the marketplace, causing potential customers to question CBST's stability.

54) PNC has not provided, and refuses to provide, CBST with bank documents confirming the existence of a creditor-borrower contractual relationship between the parties regarding an $18.3 million debt.

55) On July 3, 2018, CBST caused a certified letter to be sent to PNC's Senior Corporate Counsel John Wirthlin requesting that PNC withdraw its false $18.3 million claim in the on-going judicial proceeding, and to cease with its false, injurious and harmful conduct against CBST. **(See Exhibit G).**

56) PNC claims the $18.3 million debt is still outstanding and allegedly owed by CBST at the time of this filing.

57) Due to its falsity, PNC is intentionally harassing and embarrassing CBST with its false claim that CBST owes a debt of $18.3 million, causing unnecessary expenses to defend against PNC's egregious conduct and fraudulent claim.

58) PNC falsely represented to the bankruptcy court and/or the U.S. Bankruptcy Trustee that CBST committed a crime related to the $18.3 debt. **(See Exhibit F: Description)**

59) As shown in Exhibit F, PNC recklessly, publicly and maliciously paints CBST in a false light by publicly claiming that it was "induced by fraud" at the hands of Debtor and Debtor's company.

60) CBST Acquisition LLC is the company owned by the Debtor as referenced by PNC's Senior Corporate Counsel John Wirthlin on **Exhibit F.** Mr. Wirthlin's statement was defamatory.

61) PNC's statement, that it was "induced by fraud," is slanderous, libelous and/or defamatory in nature against CBST and harms CBST's name in the marketplace.

62) PNC had knowledge of or acted in reckless disregard as to the falsity of its statement and knew the false light in which CBST would be placed. PNC knew that its false statement toward CBST would be highly offensive to a reasonable or prudent person.

63) PNC's false and defamatory statements were publicized in the public domain for the first time on February 23, 2018.

64) On July 3, 2018, CBST informed PNC that "There is absolutely no basis for this reason" for its claim that PNC was "induced by fraud" by CBST. **(See Exhibit G)**

65) Contrary to PNC's representation, public records confirm that neither CBST nor its owner was ever charged or accused of any crime or fraud related to an $18.3 million debt owed to PNC.

66) PNC threatened a member of CBST that it was planning to take civil action against CBST regarding the purported debt.

67) PNC made, and continues to make, a material misrepresentation regarding the amount, character or legal status of a $18.3 million debt purportedly owed by CBST.

68) PNC has no evidence, documents or expressed agreement which supports an $18.3 million debt owed by CBST and/or its owner. PNC never transferred $18.3 million to CBST.

69) PNC has no certified and authenticated bank documents showing any agreement with CBST regarding an Opinion of Counsel.

70)  PNC is fraudulently attempting to collect an $18.3 million debt from CBST which it is not authorized to collect per an expressed agreement which created such debt or permitted under Ohio Law.

71)  PNC is in violation of Ohio Law as a result of its material misrepresentation and concealment of its $18.3 million claim.

72)  With the intent to invade the private affairs of CBST, PNC intentionally communicated fraudulent information to the U.S. Bankruptcy Trustee regarding an $18.3 million debt allegedly owed by CBST. PNC knew or should have known that such information was false, fraudulent and injurious to CBST.

73)  With the intent to injury CBST, PNC acted, and continues to act, with a total disregard for the truth and in a reckless manner in its communication with others regarding the purported debts in the amount of $4 million and $18.3 million purportedly owed by CBST.

74)  On or before February 2018 in Cincinnati, Ohio, PNC fraudulently and intentionally schemed to manufacture and create written bank documents to purport the existence of an $18.3 million debt allegedly owed by CBST.

75)  A prudent person would deem PNC's conduct outrageous and not normal in a civilized society.

76)  PNC committed fraud by creating the false impression and/or making a material misrepresentation that it is entitled to an $18.3 million payment from CBST.

77)  PNC's deception and unfair acts warrant tremble and punitive damages.

78) PNC informed others including the U.S. Attorney that CBST owed a debt. In violating CBST's right to privacy, solitude and seclusion, CBST did not consent to such financial information being provided to others including the U.S. Attorney.

79) On or before February 2018 in Cincinnati, Ohio, PNC committed fraud when it filed a fake and bogus claim of $18.3 million against CBST during a federal judicial proceeding.

80) CBST incurred economic and reputational loss in the marketplace as a result of PNC's fraudulent and egregious conduct in an amount to be determined by a jury but not less than $500 million.

81) CBST pleads and specifies the bare minimum of the fraud with particularity pursuant to Rule 9 as below:

  a. **The Who:** PNC Bank and its executives and employees;

  b. **The What:** The creation and manufacturing, and concealment of the same, of false and deceptive written documents purporting to show an $18.3 million debt owed by CBST;

  c. **The When:** On or before February 2018;

  d. **The Where:** In the Southern District of Ohio, namely the Cincinnati, Ohio area; and

  e. **The How:** PNC made, and continues to make, a material misrepresentation and false impression regarding the amount, character or legal status of a $18.3 million debt purportedly owed by CBST and threatens to sue CBST unless payment is made; CBST, to its detriment, relied upon the material and fraudulent misrepresentation that PNC was

acting with honesty and integrity regarding its business activities; Such reliance caused CBST to loose millions in assets.

82) PNC knew or should have known, and thus foresaw, that it's wrongful, fraudulent and egregious conduct would cause CBST economic harm, injury, and distress.

83) PNC recruited and conspired with VORYS, SATER, SEYMOUR AND PEASE LLP ("VSSP") to create and fraudulently conceal fake and fraudulent debts in the amounts of $4,000,000 and/or $18.3 million purportedly owed by CBST.

84) Glenn V. Whitaker and Erik B. Bond, VSSP attorneys, attended FBI meetings with PNC in which false, conspiratorial and discriminatory racial statements toward CBST and/or its owner were made by PNC executives.

85) At PNC's direction, VSSP attorneys concealed such false, conspiratorial and discriminatory racial statements.

86) A review of FBI 302 Statements made by PNC executives absolutely and totally disregard and make no mention of the $18.3 million debt allegedly owed by CBST and/or its majority member.

87) As an African-American owned-company, CBST is a member of a protected class.

88) Acting discriminatory, PNC treated CBST differently than similarly-situated white citizens in the Southern District of Ohio by claiming it owes an debt which does not exist.

89) Further acting discriminatory, PNC treated CBST differently than similarly-situated white citizens in the Southern District of Ohio by sending CBST a $4,000,000 Demand Letter when no such $4,000,000 obligation ever existed.

90) A PNC executive informed the FBI that PNC made the debt to CBST for "minority issues."

91) As no debt was ever provided to CBST for $18.3 million, this racial statement and others are absolutely false, injurious and harmful to CBST and the minority community, in violation of Title 42.

92) PNC had the power to prevent and stop the conspiracy. This, PNC did not do in violation of Title 42 USC 1986.

93) At the time of PNC's wrongdoing, CBST had signed and existing third-party contracts with Fifth Third Bank, JP Morgan Chase Bank, and the Small Business Administration ("contracts") valued above $12 million.

94) With discriminatory intent in violation of Title 42 USC 1981, PNC intentionally and tortiously interfered with such contracts by falsely claiming that CBST failed to perform regarding alleged debt obligations with PNC.

95) PNC racial statements to the FBI are pretextual and give rise to a prima facie case of racial discrimination under Title 42.

96) PNC's wrongful and egregious conduct deprived CBST of services, moral and ethical duties, and the ability to contract while similarly-situated white citizens were not deprived of the same.

97) Acting with malice and ill-will, PNC had knowledge that the $18.3 million debt was fake and phony at the time it made its claim against CBST.

98) PNC's racial discriminatory conduct warrants punitive consequences.

99)   PNC had a moral, professional and ethical duty to disclose and inform CBST that the $18.3 million debt was fraudulent as it was not created in the normal course of PNC's business activity. PNC breached its duty.

100) As a result of PNC's wrongdoing, CBS suffered substantial economic loss, both actual and opportunity, in an amount to be determined by a jury but not less than $500 million.

101) CBST justifiably relied upon PNC's material misrepresentation because, according to public knowledge and records, PNC does not in the ordinary course of its business activities make material misrepresentations or act fraudulently.

102) PNC induced in CBST's mind a belief that it was acting without deception and/or fraud as such conduct runs counter to the ordinary and normal course of PNC's business activities.

103) CBST's reliance on PNC material misrepresentation, concealment and fraud directly resulted in irreparable injury, harm and economic loss and damages in an amount to be determined by a jury but not less than $500,000,000.

104) By filing a fake and bogus proof of claim in a judicial proceeding, PNC abused the legal process. PNC seeks to get the court to do something which the court is powerless to do regarding an $18.3 million debt.

105) PNC's ulterior motive is to collect a payment from CBST in the amount of $18.3 million for which it is not entitled to collect.

106) PNC knows or should know that the court is not designed to endorse fraudulent debt and claims.

107) At the time of this filing, PNC has failed to withdraw its fake and phony $18.3 million proof of claim from the judicial proceeding. PNC continues to abuse the legal process and perpetrate a fraud upon the court.

108) CBST's reputation has been damaged directly by PNC's abuse and wrongful use of the legal bankruptcy proceeding, causing CBST to incur unnecessary and excessive expenses to defend against such abuse and false claims.

109) On or before February 2018, CBST had a private valuation of $150 million as confirmed by public records. PNC's egregious conduct and false claims irreparably harmed CBST in the hundreds of millions of dollars.

110) CBST pleads the factual allegations underlying a claim for fraudulent concealment with particularity as follows:

On or before February 2018 in Cincinnati, Ohio, PNC and its co-conspirators intentionally concealed their wrongful actions and sought to exclude suspicion, prevent inquiry and to prevent CBST from discovering its injuries by hiding their underlying fraudulent and tortious conduct related to the $18.3 million debt. PNC and its co-conspirators, by engaging the U.S. Trustee, engaged in a secret plan and plot to accomplish their unlawful, discriminatory and wrongful acts regarding the creation of a fake and bogus $18.3 million debt allegedly owed by CBST.

PNC acted contrivancely and with trickery to exclude suspicion and prevent inquiry regarding the $18.3 million debt. As a result of such trickery, CBST failed to discover the operative facts during the limitation period because such facts did not become known until on or about February 2018.

Affirmative, precise and detailed steps which PNC and its co-conspirators took on or before February 2018 in Cincinnati, Ohio to hide their underlying wrongdoing, fraud, racial discrimination, conspiracy and other tortious conduct included, but not limited to:

    i.    Establishing and using fraudulent and unusual banking accounting or debt collection practices and systems in order to hide the $18.3 million debt;

ii.   Creating a fake and bogus naming system in its documents and spreadsheets in order to hide the existence of a bogus $18.3 million debt;

iii.  Conspiring with government employees to assist in the creation of misleading, incomplete and false FBI 302 statements in order to hide the $18.3 million debt;

iv.   By sending the FBI a fake and bogus Suspicious Activity Report ("SAR") that excluded the $18.3 million debt;

v.    Creating and manufacturing "unusual" banking documents to prevent a paper trail, prevent inquiry and exclude suspicion of PNC's underlying wrongful conduct regarding an $18.3 million debt;

vi.   Purporting to be a creditor to CBST during a judicial proceeding regarding an $18.3 million debt

vii.  Threatening to sue CBST regarding the $18.3 million debt;

CBST further pleads:

PNC and its co-conspirators held secret meetings regarding the $18.3 million debt. PNC remained silent about such meetings with its co-conspirators, and concealed the fraudulent nature of their conversations regarding their underlying fraud, material misrepresentation and other tortious conduct discussed in such meetings regarding the $18.3 million debt.

PNC also entered into a confidential agreement with its federal regulator.

PNC's fraudulent concealment denied CBST the ability to discover its injuries during the limitation period.

**DILIGENCE EFFORTS BY CBST:** For years, CBST has diligently tried to get PNC to be truthful regarding the existence of any authentic and certified debt owed by CBST. PNC failed to do so. PNC provided CBST with no documents showing an $18.3 million debt nor a $4 million debt.

Over the years, CBST has contacted, via written and certified letters, PNC's Chairman and Record Custodian on numerous occasions. Acting with more diligence to get to the truth of any debt it allegedly owes PNC, CBST via its owner requested a federal banking investigation in 2016 by the U.S. Department of the Treasury regarding any debts originated and owed by it. To no avail, CBST even tried with no success to get the bankruptcy trustee to send it copies of any debt which he had investigated and certified to be true and correct.

On July 3, 2018, CBST sent a certified letter to PNC's Senior Corporate Counsel asking PNC to authenticate such $18.3 million debt or withdraw it from the judicial proceeding. For years, including any relevant limitation period, CBST has diligently tried to uncover the true nature of any debt it allegedly owes PNC to no avail.

At no time during its efforts did PNC ever mention an outstanding debt of $18.3 million. CBST only discovered PNC's claim of the existence of an outstanding $18.3 million debt allegedly owed by it when the bankruptcy trustee in Case No. 06-30086 filed its final report on February 2018.

111) Fraudulent concealment tolls any statute of limitations. CBST timely states claims upon which relief can be granted.

112) PNC knew that CBST was in the business of providing telecommunication services and had business relationships with Fifth Third Bank, Procter and Gamble, Verizon, AT&T, Cincinnati Bell and other Fortune 500 businesses. As noted on Exhibit A, PNC had direct knowledge of CBST's existing business relationship with Fifth Third Bank.

113) PNC's false claim that CBST had a debt other than the $250,000 Note caused Fifth Third Bank to terminate its relationship with CBST. PNC, acting without privilege, intentionally and materially interfered with CBST's relationship with Fifth Third Bank causing Fifth Third Bank to believe purported debts existed which PNC knew were phony and false. PNC had knowledge of its false claim and acted with reckless disregard for the truth regarding its claim against CBST which caused Fifth Third Bank to terminate its relationship with CBST.

114) PNC wrongful interference caused CBST to suffer economic losses in the hundreds of millions of dollars. CBST was not able to service its nationwide customers as a result of Fifth Third Bank's termination

115) As a direct and proximate consequence of PNC's wrongful, egregious and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## CAUSES OF ACTION

### COUNT 1: BREACH OF CONTRACT

116) CBST re-alleges every preceding paragraph as if fully written herein.

117) CBST will prosecute an action against PNC for breach of contract under Ohio law. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

118) As a direct and proximate consequence of PNC's wrongful conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

### COUNT 2: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

119) CBST re-alleges every preceding paragraph as if fully written herein.

120) CBST will prosecute an action against PNC for breach of the covenant of good faith and fair dealing. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

121) As a direct and proximate consequence of PNC's wrongful conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

### COUNT 3: ABUSE OF PROCESS

122) CBST re-alleges every preceding paragraph as if fully written herein.

123) CBST will prosecute an action against PNC for abuse of process under Ohio Law. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

124) The bankruptcy court is not designed to endorse fraudulent debt and claims. By filing a fraudulent claim, PNC abused the legal process by attempting to get the court to do something which the court is powerless to do regarding an $18.3 million debt purportedly owed by CBST..

125) As a direct and proximate consequence of PNC's wrongful conduct in committing fraud by creating a fake and phony $18.3 million debt, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## COUNT 4: EMERGENCY TEMPORARY RESTRAINING ORDER

126) CBST re-alleges every preceding paragraph as if fully written herein.

127) The U.S. Treasury Department has now found that no such $18.3 million debt ever existed.

128) PNC's false claims and material misrepresentations are injurious and are currently causing CBST daily harm in the marketplace.

129) CBST requests an Emergency Temporary Restraining Order restraining PNC and all persons, including individuals, companies, government agencies, officials and employees, and/or legal firms, that are working in concert, publicly or privately, with PNC from claiming that:

a. A debt in any amount other than $250,000 was originated with CBST; and

b. CBST committed or conspired to commit a fraud or any other crime upon PNC until a trial on the merits of the claims;

## COUNT 5: DECLARATORY JUDGMENT

130) CBST re-alleges every preceding paragraph as if fully written herein.

131) As shown in public filings in CBST's on-going bankruptcy proceeding, a live, real, actual and justifiable controversy exists between the parties regarding PNC's claim that CBST has an outstanding $18.3 million obligation.

132) CBST seeks to settle the controversy pursuant to Title 28 U.S.C. 2201/2202.

133) As such, CBST requests a declaratory judgment in its favor declaring the following:

a. The only debt originated between CBST and PNC is a $250,000 Amended Note originated in 2003; and

b. CBST did not commit nor conspired to commit a fraud or any other crime upon PNC.

## COUNT 6: FRAUD

134) CBST re-alleges every preceding paragraph as if fully written herein.

135) CBST will prosecute an action against PNC for fraud under Ohio law. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

136) As a direct and proximate consequence of PNC's wrongful conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## COUNT 7: CIVIL CONSPIRACY

137) CBST re-alleges every preceding paragraph as if fully written herein.

138) CBST will prosecute an action against PNC for civil conspiracy. PNC and its respective officers, executives, agents and employees, individually and/or in concert with others, engaged in a course of wrongful conduct that was carried out with the specific intent to injure CBST or otherwise deprive CBST of its lawful rights, privileges and immunities, and/or to do irreparable harm to CBST.

139) PNC maliciously combined with one or more persons, business entities or governmental agencies to injure and harm CBST. This malicious combination caused, and continues to cause, injury and damages to CBST.

140) As a direct and proximate consequence of PNC's wrongful, egregious and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## COUNT 8: DEFAMATION

141) CBST re-alleges every preceding paragraph as if fully written herein.

142) CBST will prosecute an action against PNC for defamation. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

143) PNC's statement that it was "induced by fraud" by CBST is defamatory and harms CBST's name in the marketplace.

144) As a direct and proximate consequence of PNC's wrongful, egregious and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

### COUNT 9: INVASION OF PRIVACY – FALSE LIGHT

145) CBST re-alleges every preceding paragraph as if fully written herein.

146) CBST will prosecute an action against PNC for invasion of privacy – false light. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

147) As a direct and proximate consequence of PNC's wrongful, egregious and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

### COUNT 10: CIVIL RIGHTS VIOLATION
### (Violation of Title 42 USC 1985)

148) CBST re-alleges every preceding paragraph as if fully written herein.

149) CBST will prosecute an action against PNC for violation of Title 42 USC 1985. PNC, individually and/or in concert with others, engaged in a course of conduct of wrongful and racially discriminatory conduct that violated CBST's civil rights and continues to do so.

150) As an African-American owned-company, CBST is a member of a protected class.

151) Acting discriminatory, PNC treated CBST differently than similarly-situated white citizens in the Southern District of Ohio by claiming it owes an $18.3 million debt which does not exist.

152) At all times material hereto, PNC had an affirmative duty not to discriminate and/or conduct themselves in a manner free of depriving or conspiring to deprive CBST of the equal protection of the laws, or of equal privileges and immunities under the laws.

153) This, PNC did not do by creating a fake and phony $18.3 million debt and publicly claiming that CBST is obligated to pay the same. PNC did not and does not make the same claim against similarly-situated white citizens in the Southern District of Ohio.

154) As a direct and proximate consequence of PNC's wrongful, egregious and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

### COUNT 11: CIVIL RIGHTS VIOLATION
### (Violation of Title 42 USC 1986)

155) CBST re-alleges every preceding paragraph as if fully written herein.

156) CBST will prosecute an action against PNC for violation of Title 42 USC 1986. PNC, individually and/or in concert with others, engaged in a course of conduct of wrongful and racially discriminatory conduct that violated CBST's civil rights and continues to do so.

157) At all times material hereto, PNC had an affirmative duty not to discriminated and/or conduct themselves in a manner free of depriving or conspiring to deprive CBST of the equal protection of the laws, or of equal privileges and immunities under the laws.

158) PNC had the power to prevent or aid in preventing the commission of the conspiracy, but neglected ore refused to do so, in violation of Title USC 1986.

159) As a direct and proximate consequence of PNC's wrongful, egregious, discriminatory and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## COUNT 12: RACIAL DISCRIMINATION
### (Violation of Title 42 USC 1981 – Denial of a Statutory Right)

160) CBST re-alleges every preceding paragraph as if fully written herein.

161) CBST will prosecute an action against PNC for race discrimination, violation of a statutory right under of Title 42 USC 1981. PNC, individually and/or in concert with others, engaged in a course of conduct of wrongful and racially discriminatory conduct that violated CBST's civil rights and continues to do so.

162) At all times material hereto, PNC had an affirmative duty not to discriminated and/or conduct themselves in a manner free of depriving or conspiring to deprive CBST of the equal protection of the laws, or of equal privileges and immunities under the laws.

163) PNC deprived CBST of its ability, right and/or enjoyment to contract by intentionally and tortiously interfering with said contracts by creating bogus and false debts and claiming that CBST failed to pay such debts.

164) As a direct and proximate consequence of PNC's wrongful, egregious, discriminatory and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## COUNT 13: FRAUDULENT CONCEALMENT

165) CBST re-alleges every preceding paragraph as if fully written herein.

166) CBST will prosecute an action against PNC for fraudulent concealment. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

167) CBST first discovered and learned of its injuries via the February 2018 public filing in the aforementioned judicial proceeding.

168)  As a direct and proximate consequence of PNC's wrongful and fraudulent conduct in concealing its fraud and other tortious conduct related to a fake and phony $18.3 million debt, CBST was injured and deprived of any knowledge of its injuries during any limitation period.

169)  As such, equitable tolling of all claims is warranted and CBST makes a request for the same.

## COUNT 14: NEGLIGENT MISREPRESENTATION

170)  CBST re-alleges every preceding paragraph as if fully written herein.

171)  CBST will prosecute an action against PNC for negligent misrepresentation. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

172)  As a direct and proximate consequence of PNC's wrongful, egregious and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## COUNT 15: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

173)  CBST re-alleges every preceding paragraph as if fully written herein.

174)  CBST will prosecute an action against PNC for tortious interference with a business relationship.  PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

175)  As a direct and proximate consequence of PNC's wrongful, egregious and malicious conduct, CBST was injured and suffered, and continues to suffer, damages in an amount to be determined by a jury but not less than $500,000,000.

## COUNT 16: RELIEF PURSUANT TO ARTICLE III OF THE CONSTITUTION

176) CBST re-alleges every preceding paragraph as if fully written herein.

177) CBST will prosecute an action against PNC for relief pursuant to Article III of the Constitution. PNC, individually and/or in concert with others, engaged in a course of conduct that injured CBST.

178) A controversy exists between the parties regarding the origination of purported debts in the amounts of $4 million and $18.3 million. Contrary to PNC, CBST disputes the origination of such debts.

179) Traceable to PNC, CBST suffers an actual and imminent injury-in-fact regarding the denial of financing as a result of PNC's false claims in the public domain. Pursuant to Article III, CBST seeks redress to correct and remove PNC's false claims from the public domain concerning the origination of purported debts in the amounts of $4 million and $18.3 million.

## DEMAND FOR DAMAGES AND ATTORNEY FEES

180) CBST makes a demand for all attorney fees and costs of litigation. CBST also makes a demand for punitive, tremble, actual, consequential, exemplary and/or compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, based on the foregoing, demands judgment on its claims for relief against PNC as follows:

A) Assume immediate jurisdiction of this proceeding, set this proceeding for an immediate hearing and grant CBST the temporary relief it seeks until a trial on the merits of its claims for relief;

B) Issue an Emergency Temporary Restraining Order against PNC restraining PNC and all persons, including individuals, companies, government agencies, officials and employees, and/or legal firms, that are working in concert with PNC from claiming that:

    a. A debt in any amount other than $250,000 was originated with CBST; and

    b. CBST committed or conspired to commit a fraud or any other crime upon PNC until a trial on the merits of the claims;

C) Issue an Order declaring the following in CBST's favor that:

    a. The only debt between CBST and PNC is a $250,000 Noted originated in 2003; and

    b. CBST did not commit nor conspired to commit a fraud or any other crime upon PNC.

D) PNC shall pay PNC tremble damages.

E) PNC shall pay CBST actual, consequential and/or compensatory damages in an amount to be determined by a jury but not less than $500,000,000.

F) On any and all monetary judgment amounts awarded, PNC shall pay pre-judgment and post-judgment interest at an annual rate of fifteen percent (15%) or the maximum allowed by law, whichever is greatest.

G. PNC shall pay CBST, as punitive and/or exemplary damages, fifteen percent (15%) of the value of PNC's assets as publicly filed with the Securities and Exchange Commission (SEC) valued at the time of this instant filing;

H. An Order for equitable tolling of all claims made herein, if necessary;

I. For all attorney fees, expenses and costs of litigation; and

J. All other relief the court deems appropriate.

Respectfully Submitted,

/s/   DOMINIC MANGO
DOMINIC MANGO (0071238)
MangoLaw LLC
43 S. Franklin Street
Delaware, Ohio  43015

**COUNSELOR FOR PLAINTIFF**
**CBST ACQUISITION LLC**