**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CBST ACQUISITION, LLC,

       Plaintiff,

       v.

PNC BANK, N.A., et al.,

       Defendants.

Case No. 1:19-cv-06

Dlott, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff CBST Acquisition, LLC ("CBST") initiated this lawsuit on January 2, 2019 against PNC Bank, N.A. and National City Bank n/k/a PNC Financial Services Group, Inc. (collectively "PNC"). The PNC Defendants have moved to dismiss the complaint. (Doc. 8). This case has been referred to the undersigned magistrate judge for preliminary consideration and disposition of all pretrial and post-judgment motions and procedures, whether dispositive or not. (Doc. 2). Pursuant to that referral, the undersigned now recommends that this case be dismissed.

### I.    Standard of Review

In evaluating the pending motion under Rule 12(b)(6), this Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). At the same time, this Court

need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true. *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000). To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory. *Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005), *cert. denied,* 547 U.S. 1111, 126 S. Ct. 1911, 164 L.Ed.2d 663 (2006).

*Id.,* 508 F.3d at 336–37. While the determination of whether Plaintiff's allegations state any claim rests primarily upon the allegations of its complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (internal quotation and citation omitted); *accord Luis v. Zang*, 533 F.3d 619, 632 (6th Cir. 2016). Without converting PNC's motion to one for summary judgment,[1] the undersigned considers the allegations in the instant complaint in light of matters of public record (including multiple related cases) and CBST's own exhibits.

## II.    Background and Key Allegations in CBST's Complaint

PNC's motion to dismiss characterizes the instant civil lawsuit as "the most recent of six lawsuits filed to date by [Orlando] Carter or his associates – this time, on behalf of his company, CBST – in a blatant attempt to collaterally attack his 2009 conviction for bank fraud, mail fraud, bankruptcy fraud and making false statements and oaths." (Doc. 8 at 2, citing *United States of America v. Orlando Carter*, Case No. 1:08-cr-51).

Carter was the majority owner of Dynus Corporation ("Dynus"). CBST, the named Plaintiff in this case, is a limited liability company that appears to have been operated as

---

[1] The undersigned declines CBST's invitation to convert the motion to one for summary judgment under Rule 56, Fed. R. Civ. P., in order to consider an evidentiary exhibit attached to CBST's response. PNC argues persuasively that CBST's exhibit does not alter the analysis and that conversion of PNC's motion over Defendant's objection, before discovery has even begun, is not appropriate. The undersigned therefore will limit review of PNC's motion to the standards applicable under Rule 12(b)(6).

a subsidiary of Dynus that is consistently referred to by Carter as "my company." (*See* Complaint, Doc. 1-1 at 10, Exhibit G).[2] CBST's complaint alleges: "CBST Acquisition LLC is the company owned by the Debtor [Carter] as referenced by PNC's Senior Corporate Counsel John Wirthlin…." (Doc. 1 at ¶60; *see also id.* at ¶64, alleging that "CBST informed PNC," through a letter from Carter to Wirthlin, that PNC's description in a creditor's claim filed in Bankruptcy Court in 2006 against Carter for "Funding of lease induced by fraud of Debtor and Debtor's company" was without factual support). In an affidavit attached to the complaint in another recent civil case filed by CBST, Carter similarly states ""I am the owner and founder of CBST Acquisition LLC." *See* Case No. 1:18-cv-162-SJD-KLL (Doc. 1 at 10, Affidavit of Orlando Carter).

The undersigned agrees that the current lawsuit by CBST should be dismissed based in part upon judicial notice of prior litigation, including but not limited to Carter's criminal conviction. However, the undersigned stops short of construing CBST's civil complaint as yet another form of collateral attack by Carter on his criminal conviction, as if this were a motion filed under 28 U.S.C. § 2255. Instead, the undersigned recommends that PNC's motion to dismiss be granted based upon records that contradict and render wholly incredible many of the allegations in CBST's latest complaint, including an allegation that CBST only recently "discovered" its claims. *See generally* Rule 201, Fed. R. Evid. Based upon irrefutable notice attributable to CBST, ten of CBST's claims are barred by applicable statutes of limitations. The remaining allegations are legally insufficient to state any claim, for the same reasons stated in prior cases in which virtually

---

[2] Although CBST is sometimes referred to as a "subsidiary" of Dynus, in other court records Dynus and CBST are referred to interchangeably.

3

identical claims have been dismissed by this Court. In addition, because Carter and CBST are in privity, the undersigned alternatively recommends dismissal of this lawsuit based upon the doctrines of issue preclusion and/or claim preclusion.

Notwithstanding the extremely close relationship between Carter and Dynus/CBST and the facts underlying Carter's conviction, CBST denies that its most recent case is predicated on any of the prior cases, arguing that it is entitled to file this civil suit in its own right as "a distinct and separate legal entity from Carter." (Doc. 12 at 2). At the same time, CBST repeatedly refers to prior cases both directly and indirectly, including the criminal case against Carter and related civil cases. (*See* Complaint, Doc. 1 at ¶¶ 5, 7, 32, 38, 40-45, 48, 52, 59, 78, 83-86, 89-90, 103-108, 110).

The undersigned finds the following eight allegations to be central to CBST's current complaint: (1) a $4 million loan between National City Bank (a/k/a "the Bank") and Dynus/CBST never existed, based upon PNC's recent inability to produce documentation to confirm the existence of that loan;[3] (2) the Bank changed the amount of a 2003 Note without CBST's consent from $250,000 to $4 million and misled the U.S. Attorney (and others) regarding the existence of the $4 million debt; (3) the Bank wrongfully sent CBST a demand letter for $4 million; (4) the Bank wrongfully filed two claims in bankruptcy court against Carter in 2006, stating that CBST owed PNC $18.3 million and/or $8.8 million; (5) the Bank engaged in "fraudulent concealment" of relevant facts until February 2018; (6) the Bank "currently" is trying to collect the $4 million debt together with another $18.3

---

[3] The original lender was Provident Bank. Provident Bank was acquired by National City Bank, which in turn was acquired by PNC. For purposes of the pending motion to dismiss, "PNC" and "National Bank" are considered to be synonymous, and are interchangeably referred to as "the Bank."

million debt from CBST; (7) the Bank failed to apply two payments made by CBST from a Fifth Third Bank account in 2004 to the original $250,000 Note; (8) CBST "recently" sought financing that was denied "based on PNC's false claims…regarding outstanding debts allegedly originated and owed by CBST." Based on these central allegations and supported by 13 pages of exhibits, CBST's 29-page complaint sets forth sixteen counts, including 14 causes of action plus two additional counts seeking an emergency temporary restraining order and a declaratory judgment.[4]

Most of CBST's current claims have been previously litigated by Carter and his associates, including by CBST itself. The prior cases provide evidence of constructive notice to CBST of its claims more than a decade ago, in contradiction to CBST's implausible contrary allegations of recent discovery. The prior cases also contain legal analysis of the same claims that the undersigned finds at least persuasive, if not binding.

## A. Judicial Notice of the Existence of Related Cases

In August 2009, a jury convicted Orlando Carter of eleven fraud and fraud-related federal offenses. *See* Case No. 1:08-cr-51 (Doc. 75). Carter unsuccessfully appealed his conviction, and has filed multiple (equally unsuccessful) post-conviction motions. Over the years, Carter and others also have filed numerous civil suits that relate to

---

[4] The asserted claims include: breach of contract (Count 1); breach of the covenant of good faith and fair dealing (Count 2); abuse of process (Count 3); fraud (Count 6); civil conspiracy (Count 7); defamation (Count 8); invasion of privacy – false light (Count 9); Civil Rights Violation under 42 U.S.C. § 1985 (Count 10); Violation of 42 U.S.C. § 1986 (Count 11); Violation of 42 U.S.C. § 1981 (Count 12); fraudulent concealment (Count 13); negligent misrepresentation (Count 14); tortious interference with a business relationship (Count 15); and relief pursuant to Article III of the Constitution (Count 16). In addition to a temporary restraining order, injunctive and declaratory relief (Counts 4 and 5), CBST seeks compensatory damages from PNC in excess of $500 million, "tremble" damages, pre- and post-judgment interest, punitive damages, and attorney's fees. (Doc. 1 at 27-29).

Carter's conviction.[5]  *See e.g.*, Related Case Memorandum filed in Civil Case 1:18-cv-162 on December 13, 2018, Civil Cases 1:17-cv-508, 1:18-cv-162, 1:18-cv-400, 1:18-cv-825; *see also Carter v. United States*, Civil Case No. 1:16-cv-530; *Carter v. United States*, Civil Case No. 1:17-cv-248; *Rogers v. PNC Bank*, Case No. 1:18-cv-889; *Carter v. PNC Financial Servs. Grp., Inc.*, Case No. 3:18-cv-283 (appeal of dismissal of adversary proceeding in bankruptcy court).  Some of Carter's motions and lawsuits have been filed pro se, while others have been filed through the same counsel who represents CBST in this civil case.  All direct and collateral challenges to Carter's underlying conviction to date have been denied, and nearly all related civil cases filed to date also have been dismissed. *But see Carter v. PNC Bank*, Case No. 18-cv-706-SJD-KLL (still-pending case that alleges, similar to the instant complaint, that PNC created a fraudulent $18.3 million debt that Carter is now obligated to pay).

Because of the intertwined nature of the proceedings, the undersigned devotes significant time to summarizing the prior cases, beginning with Carter's criminal and bankruptcy proceedings, and followed by a discussion of related civil cases.

### 1.  *United States v. Carter*, Criminal Case No. 1:08-cr-51

Carter's criminal case and post-conviction proceedings refute CBST's allegations in this civil case that the $4 million guaranty never existed, and – importantly - that CBST had no notice of that alleged loan or of PNC's demand for repayment.

---

[5] Carter also has filed unrelated civil cases, as well as cases less closely related to his criminal conviction. *See e.g.*, Case Nos. 1:11-cv-815; 1:15-cv-14, 1:15-cv-544, 1:16-cv-530.  All of those cases have been dismissed.

Carter was indicted on May 7, 2008 by a grand jury on charges that related to multiple schemes occurring primarily between 2004 and 2006, including: (1) a scheme to defraud Long Beach Mortgage Company by submitting or causing to be submitted a false residential mortgage application; (2) a scheme to defraud Fifth Third Bank by submitting false financial statements to support a line of credit for Carter's business, Dynus Corporation and/or CBST, and (3) a scheme to commit bankruptcy fraud by concealing cash transfers to a bank account controlled by Carter's fiancé. *See United States v. Carter*, Case No 1:08-cr-51, 2013 WL 12213387, at *1 (S.D. Ohio Sept. 30, 2013). On December 31, 2004, Jim Smith, then president of Dynus, sought a $4 million loan from National City Bank, supposedly on behalf of Butler County so that Butler County could lease equipment from Dynus for the installation of a fiber optic network.

> Smith was ostensibly authorized to borrow money on Butler County's behalf by the county auditor, Mary Kay Rogers. In truth, however, Rogers had no authority to designate Smith…. National City was leery of the transaction, …[and] only agreed to extend the loan on the condition that within thirty days Dynus provide it with an opinion of counsel letter from Butler County stating that the transaction had been reviewed and that the county was authorized to enter into it. If Dynus failed to provide the opinion of counsel letter…, it promised to repay the loan….

> National City wired the loan proceeds to Dynus on December 31, 2004. Dynus [fraudulently] booked the proceeds as a revenue from the "sale" of the fiber optic network to Butler County…. Later in 2005, Carter, Smith and others at Dynus knowingly concealed the existence of the guaranty from Dynus's external auditors… [who] approved Dynus's financial statements. Then Dynus, with Carter's knowledge and approval, used the fraudulent financial statements to obtain money from Fifth Third Bank through a line of credit. Carter, in turn, used the money Dynus received from Fifth Third to fund an extravagant personal lifestyle.

> Dynus could not and did not provide the opinion of counsel letter National City required. National City, therefore, demanded that Dynus repay the $4,000,000. Butler County, meanwhile, had been completely unaware that

Dynus had supposedly borrowed $4,000,000 on its behalf. When, through an inadvertent computer error, the responsible officials in Butler County became aware of this transaction, they denied to National City that the fiber optic network project had been authorized and that the county was liable to repay the loan.

*United States v. Carter*, Case No 1:08-cr-51, 2013 WL 12213387, at **1-2 (S.D.Ohio, Sept. 30, 2013); *see also United States v. Carter*, Case No. 18-3080 (6th Cir. April 26, 2018) (Order summarizing basis for Carter's conviction, copy filed as Doc. 222 in Case No. 1:08-cr-51). Unlike Carter, Rogers and Smith both pleaded guilty. *See, e.g.*, *United States v. Smith*, Case No. 1:07-cr-04; *United States v. Rogers*, Case No. 1:08-cr-02.

At trial, Carter maintained that he was unaware of the $4 million loan guaranty that Smith had provided to the Bank on behalf of Dynus and/or CBST. *See Carter v. United States*, 2014 WL 2955107 at **3-4 (S.D. Ohio Aug. 13, 2014) (Beckwith, J., Order denying post-conviction relief). However, the government put on evidence that National City had demanded the opinion of counsel letter or the return of the loan proceeds both in a face-to-face meeting with Carter, and in written correspondence directed to him. *Id.* The trial judge described the government's evidence against Carter as "nearly overwhelming," and noted that the evidence "firmly demonstrated…that Carter …participated in defrauding both Butler County and National City Bank and that his involvement in using falsified documents to obtain loan proceeds from National City Bank was consistent with the charge that he used false or misleading documents to obtain money from Fifth Third Bank." *Id.* at *5-6.

[T]he evidence at trial showed that Carter knew about the guaranty, that Carter knew that National City Bank was demanding return of the loan proceeds, and that Carter acted in concert with Smith and Verbruggen to conceal this information from the auditors because it would have negatively

affected the audit results.  He then knowingly submitted the fraudulent annual financial statement to obtain the line of credit for Dynus, as well as other loans, from Fifth Third Bank.  …  Carter clearly did not deal with Fifth Third Bank in a[n] honest and forthright matter.  The accounting and legal minutia that Carter now raises about the guaranty do not undermine the fraudulent manner in which he obtained funds from Fifth Third Bank.

*Id.*, 2014 WL 3955107 at *7.

In addition to the federal criminal prosecutions against Carter, Smith, and Rogers, National City initiated civil litigation that sought to recover the $4 million from Butler County, the supposed "borrower" who was to have received the funds.  In that separate state court litigation,

National City came to agree with Butler County that Smith was not in fact an authorized agent of the county and agreed that the county was not liable to repay the loan.  Therefore, in a document dated May 26, 2006, National City released the Butler County Board of Commissioners, the Butler County Auditor, and Butler County, "together with any officer, agent, or employee of any of them,"…from liability on the loan.

*U.S. v. Carter*, Case No. 18-cr-51, 2013 WL 12213387 at *2 (S.D. Ohio Sept. 30, 2013) (Beckwith, J.).

On July 5, 2013, through the same counsel who represents CBST in the instant civil case, Carter filed a motion seeking a new trial based in part on a theory that the Bank's 2006 state court "release" of the $4 million loan was exculpatory and proved him innocent.  This Court denied that motion for multiple reasons, including because it was "based on the factually incorrect conclusion that by releasing Butler County from the liability on the loan, National City released [Carter's company] Dynus, and therefore [Carter], from liability on the loan."  *Id.* at *4.

Through the same counsel, Carter filed his first motion under 28 U.S.C. § 2255

under a new theory, suggesting that the loan guaranty by CBST was not legally valid for reasons that include but were not limited to an argument that "[t]he alleged guaranty did not even have the legal name of Dynus or its subsidiary, CBST Acquisitions, LLC on it…." (Case No. 1:08-cr-51, Doc. 154 at 9). Carter's first §2255 motion also argued that trial counsel was ineffective for failing to retain a forensic accountant to contest the $4 million guaranty. This Court denied the motion and the Sixth Circuit denied a certificate of appealability.

Carter filed three more post-conviction motions challenging the existence of the $4 million loan. Carter's new line of attack alleged that Carter had discovered "new evidence" in 2015 disproving the existence of the 2004 loan, based in part on PNC's inability to produce documentation years later.[6] In its April 26, 2018 Opinion denying Carter's motion for leave to file a second or successive motion to vacate his conviction, the Sixth Circuit rejected the proposition that a failure of PNC to produce documents in 2015 proved that the fraudulent loan guaranty entered into by CBST more than a decade earlier had never existed. The Sixth Circuit explained:

> At trial, the government presented the $4 million guaranty signed by James Smith as General Manager of CBS Technologies [CBST] and the demand letter from National City Bank, which were authenticated and accepted into evidence without objection. Multiple witnesses testified about the existence of the guaranty. Carter's defense at trial was that he did not know about the guaranty. Carter took a different approach in his first motion to vacate, asserting that the guaranty was invalid. In this motion and in his prior motion for an order authorizing a second or successive motion to vacate, Carter

---

[6] On March 7, 2017, Carter, through the same counsel that now represents CBST in this case, filed a motion under Federal Rule of Civil Procedure 60(b), alleging "fraud upon the court" relating to the existence of the $4 million loan/loan guaranty "between CBST Acquisition LLC, a Dynus Corporation subsidiary ("Dynus") and National City Bank"). (Doc. 213 in Case No 1:07-cr-51). Plaintiff's motion was denied on procedural grounds, and was transferred to the Sixth Circuit to determine whether a successive §2255 motion could be filed.

contends that the guaranty never existed because his and the OCC's requests to PNC Bank failed to turn up any documents relating to the guaranty. As we previously stated, the failure of a successor bank to produce records in response to requests about matters more than ten years in the past, viewed in light of the trial evidence demonstrating the existence of the guaranty, is insufficient "to establish by clear and convincing evidence that no reasonable factfinder would have found [Carter] guilty of the offense." 28 U.S.C. § 2255(h)(1).

*Id.*, Case No. 1:08-cr-51, Doc. 222 at 4.

The undersigned concludes that Carter's criminal case, including post-conviction proceedings, provided constructive notice to CBST, through Carter, of the $4 million loan and demand letter not later than the criminal trial, if not earlier when the events occurred. Those facts contradict the wildly implausible allegations in CBST's current complaint that (again) challenge the existence of the 2004 loan guaranty and allege that CBST was unaware of any facts underlying its claims prior to February 2018. *Accord Rogers v. United States*, Case No. 1:18-cv-889, Doc. 4 at 12, rejecting Rogers' identical argument (quoting from *In re: Orlando Carter*, Case No. 18-3080 (6th Cir. April 26, 2018)).

## 2. Civil Cases That Refute Key Allegations and Reflect Additional Notice to CBST of Claims Presented in this Case

CBST admits that most of its claims would be time-barred but argues that the relevant statutes of limitations should be tolled based upon an allegation that CBST only recently "discovered" the existence of any possible "debt" to PNC, based in part upon a February 2018 filing in bankruptcy court. CBST adds a claim of "fraudulent concealment" against PNC to bolster its assertion that the limitations periods should be tolled. However, CBST's allegation that it only recently discovered PNC's filing of an allegedly false or fraudulent claim in bankruptcy court is contradicted by multiple records. Carter, as

CBST's owner, previously filed numerous challenges to the filings by PNC in bankruptcy court, as well as civil cases challenging the existence of the 2004 $4 million loan/guaranty between PNC and CBST.  Co-conspirator Mary Rogers has asserted similar claims, as has CBST itself.

The following cases in both bankruptcy court and in this Court render incredible CBST's allegations that it only recently discovered the basis for its claims in this lawsuit.

### a. *In re Carter*, Bankruptcy Petition 3:06-bk-30086 and related Adversary Proceedings in Bankruptcy Court

Carter's underlying criminal conviction included counts of bankruptcy fraud [18 U.S.C. § 157(1) & (2)] and false oaths to a bankruptcy trustee [18 U.S.C. § 152(2) & (3)], which arose out of Carter's Chapter 7 petition in U.S. Bankruptcy Court for the Southern District of Ohio, Western Division at Dayton, filed on January 18, 2006.  *See* Case No. 3:06-bk-30086.  On August 18, 2006, National City filed Claim 10-1 against Debtor Carter in the amount of $18,266,253.00 as an unsecured non-priority claim.  However, that filing was superseded three days later, on August 21, 2006, when National City amended its claim to $8,810,805.65.  (Amended Claim 10-2).  The summary of the Bank's claim describes it as based on "Funding of lease induced by fraud of Debtor and Debtor's company."  The same **2006** summary description is included as an exhibit to CBST's complaint.  (Doc. 1-1 at 9, Exhibit F).

The following more detailed description was filed in bankruptcy court:

Debtor was the principal and/or president and/or majority shareholder in Dynus Corporation ("Dynus").  Dynus solicited a purported lease (the "Lease") between Butler County, Ohio and National City Commercial Capital Corporation ("NC4").  The Lease has been judicially determined to be unenforceable.

12

Debtor was fully aware of the negotiation of the Lease and either participated or acquiesced in the fraud which was perpetrated upon NC4 [the Bank] by Dynus. Debtor, therefore, is personally liable to NC4 for all amounts due under the Lease. Due to the voluminous number of documents involved with the Lease, NC4 will make the Lease documents available upon request.

The amount owed by the Debtor under the Lease is as follows:

| | | |
|---|---|---:|
| 1. | Amount Owed Under Lease Number 53393004 | $6,115,649.41 |
| | Amount Owed Under Lease Number 52810004 | 2,676,192.12 |
| 2. | Attorney's Fees | 18,481.40 |
| 3. | Costs | 482.72 |
| | | $8,810,805.65 |

(Amended Claim 10-2 at 2).

CBST, owned by Carter who entered agreements on its behalf, is deemed to have constructive notice of this claim in 2006 when it was filed in the public record, as evidenced by CBST's own exhibit. It is not credible for CBST to allege that it first discovered the claim through a 2018 filing in Carter's bankruptcy case, as though CBST had no knowledge of any earlier public filings in Carter's bankruptcy case.

In fact, CBST arguably received notice of the $4 million loan guaranty claimed by the Bank against Carter and Dynus/CBST before Carter filed for bankruptcy in January 2006. According to an adversary proceeding that Carter filed in 2018, PNC executives threatened to sue Carter for $4 million on his company's loan guaranty, which threat "caused Carter to file bankruptcy against his will." (Case 3:18-ap-03034, Complaint at ¶¶14-15). Carter alleged that at that time, his attorney had advised Carter that "he had investigated the purported $4,000,000 debt and such debt was authentic and real." (*Id.* at ¶16). Carter alleged that prior to filing his bankruptcy filing, the Bank had also "informed

government officials that Carter <u>and his company</u>" had a $4 million debt. (*Id.* at ¶22, emphasis added).

Carter also received notice of the Bank's motion to extend time for objecting to discharge, in order for the Bank "to obtain initial information to begin its investigation of the Debtor's role in Dynus Corporation, to which NC4 transferred a significant sum of money on request of Debtor." ((Case No. 3:06-bk-30086, Doc. 82 at 4; *see also* Doc. 135). And on February 4, 2008, the Chapter 7 Trustee initiated an adversary proceeding against Carter, alleging in part:

> 6. For an unknown period of time, Debtor engaged in various schemes personally and through companies and subsidiary companies, which were mere instrumentalities of the Debtor, aimed at obtaining funds to support his lifestyle and the lifestyles of his friends, family members and paramour(s) and which resulted in the creation of debt, the draining of equity from businesses and/or sheltering or concealment of property in which the Debtor otherwise owned a beneficial interest or control.
>
> 7. The companies used by the Debtor as instrumentalities for obtaining loans, the transfer or concealment of property and acquisition of additional businesses include, upon information and belief, the following (hereinafter referenced as the "Shell Companies"):
>
> > a. Dynus Corporation
> > b. Dynus Foundation
> > c. Dynus Homes
> > d. Dynus Global Communications, LLC
> > e. Dynus Financial Services, LLC
> > f. Dynus Properties, LLC
> > g. CBST Acquisition, LLC d/b/a Dynus Technologies d/b/a CBS Technologies
> > h. CBS Network Solutions, LLC
> > i. Cincinnati Capital Partners XVII, LLC
> > j. Cincinnati Capital Partners XXI, LLC
> > k. Steger Capital I
> > l. Steger Capital II
> > m. Optical Data
> > n. JS Properties, LLC

o. ExecSolutions, LLC d/b/a Exec Building Solutions

8.  The Trustee, despite extensive efforts, has been unable to untangle or otherwise determine the business and financial affairs of the Debtor, including the affairs of the Shell Companies, which are not made clear through the Debtor's Schedules and Statement of Financial Affairs.

9.  The Debtor's affairs appear to be unnecessarily complicated through the use of alternate and differing corporate structures (the Shell Companies) with the same or similar names, convoluted ownership structure and undocumented or underdocumented transfers between entities without apparent business purpose.

Case No. 3:06-bk-30086 (Doc. 176); Adversary Proceeding 3:08-ap-03027 (Doc. 1).  The

Trustee's 2008 Complaint adds to the cumulative body of evidence that Carter and CBST

were on notice of PNC's claim more than a decade before CBST now alleges it

"discovered" the bankruptcy court filing. Indeed, in Adversary Proceeding 3:18-ap-03034,

Carter alleged that he requested that the Trustee "object to and disallow" the Bank's

"false" claims back on June 4, 2008.  (Id., Doc. 1 at 7, ¶ 40).  Unsurprisingly, the Trustee

declined to do so.  *Id.*

On October 18, 2013, the Bankruptcy Court denied Carter's petition for discharge.

(*Id.*, Doc. 45, Decision Denying Debtor's Chapter 7 Discharge filed on October 18, 2013).

U.S. Bankruptcy Judge Humphrey concluded that Carter had made a false oath or

account under 11 U.S.C. §727(a)(4)(A), specifically including but not limited to

undisclosed transfers.  Judge Humphrey declined to address Carter's challenges to any

specific factual assertions made by the Trustee, finding those challenges to be irrelevant

due to his criminal conviction for violating 18 U.S.C. §152(2) and (3), the elements of

which are identical to a violation of 11 U.S.C. §727(a)(4).  "The record shows Carter was

convicted after a trial on the precise issue of a false oath in bankruptcy and that the Sixth

Circuit rejected all challenges to the conviction upon direct appeal." (*Id.*, at 4; *see also* Doc. 1, Complaint in Case No. 3:08-ap-03027, Count III).

On February 18, 2016, Carter moved to amend his Bankruptcy Schedules to remove PNC Bank's claim as a creditor. (Doc. 255). Because a Debtor may amend a schedule "as a matter of course at any time prior to a case being closed," the bankruptcy court granted the motion. (Doc. 256). However, the Court warned Carter that his action in "amending Schedule F to remove [the Bank] does not affect the Claimant's allowed unsecured claim (Proof of Claim 10-2)." (*Id.*)

On May 23, 2018, the Chapter 7 Trustee filed a Final Report indicating that there were insufficient assets to pay priority claims, leaving $0 to pay any unsecured claims, including Amended Claim 10-2. Carter objected to the final report, contesting Amended Claim 10-2. Judge Humphrey overruled that objection:

> As explained in the court's prior Order …and reiterated here, **"the Debtor amending his Schedule F to remove [PNC] does not affect the Claimant's allowed unsecured claim (Proof of Claim 10-2)."** Moreover, PNC's claim is properly listed in the Trustee's Final Report…as a "[t]imely allowed general (unsecured) claim."

(Doc. 274, emphasis original).[7]

Undeterred, Carter filed another Objection to the claim on June 21, 2018, alleging - as CBST does in this case - that Carter "only learned of [PNC's] fraudulent claim via the May 23, 2018 Court filing by the Trustee…." (Doc. 282). Judge Humphrey overruled Carter's second objection on June 25, 2018, explaining that Carter, as an insolvent

---

[7] Carter appealed the bankruptcy court's order overruling his objection to the Trustee's final report but that appeal was dismissed by the Bankruptcy Appellate Panel of the Sixth Circuit on August 21, 2018. *See* Sixth Circuit Case No. 18-8026.

Debtor, lacked standing to contest the claim. (*See* Case No. 3:06-bk-30086, Doc. 284 at 2, "the allowance or disallowance of this Claim has no effect on this bankruptcy estate or the Debtor.")  However, the bankruptcy court further noted that Carter was attempting to file an objection nearly *12 years* after the claim had been filed, long after the Trustee would have had a duty to object to any improper claim.  (*Id.*)  On July 31, 2018, Judge Humphrey denied Carter's motion for reconsideration.  (Doc. 290).

On July 13, 2018, Carter filed a motion seeking sanctions against PNC Bank for filing Claim 10-1 and Amended Claim 10-2.  By Order filed July 31, 2018, Judge Humphrey again noted the age of the 12-year old claims and irrelevancy to the administration of the estate.  The court noted the motion was "the fourth in a series of filings…which re-argue the same facts and law with regard to [the Bank's] claim and have all been denied by this Court."  (Doc. 291 at 2).  Citing case law on timeliness, Judge Humphrey reiterated: "In addition to the fact the claim has no effect on this case whatsoever, the sanctions motion is being filed 12 years after the proof of claim was filed and amended."(*Id.*)

On July 23, 2018, Carter initiated a new adversary proceeding, seeking a temporary restraining order, preliminary injunction, permanent injunction, and declaratory judgment against PNC.  (Doc. 1 in Case No. 3:18-ap-03034).  Carter alleged that PNC and unnamed John Doe defendants acting in concert had filed a fraudulent non-priority unsecured claim in August 2006.  In contrast to CBST's allegations here, Carter stated that PNC had "not brought a legal action against Dynus or Carter seeking payment on a debt in either amount of $18,266,253, $8,810,805.65 or $4,000,000."  (*Id.*, Doc. 3 at 3).

The bankruptcy court dismissed Carter's adversary proceeding, noting that the same issues had been addressed "ad nauseam in multiple orders."

> Undaunted, Carter has filed the Complaint, and it alleges, among other things, that he does not owe PNC funds, that PNC filed a fraudulent claim and made statements to Carter and/or his counsel that led to his decision to file bankruptcy, and that all of these actions damaged Carter. He seeks a temporary restraining order essentially to stop PNC from claiming that it is a creditor, or allowing PNC to have an allowed claim in this case. Carter is seeking injunctive and declaratory relief.
> …
> Unfortunately for Mr. Carter…[the court] lacks subject matter jurisdiction to address this matter because it has no conceivable effect on the bankruptcy state or the debtor's discharge…. Bankruptcy courts do not address debtor-creditor disputes that have no impact on the bankruptcy estate.
>
> Although more need not be said, it may be added that, as this court stated in a concurrently entered order denying a sanctions motion under Rule 9011, these issues are being raised on the precipice of the closing of this case (and indeed have prevented the closing of this case), related to events over 12 years ago and are **untimely**.

Case No. 3:18-ap-03034 (Doc. 5, emphasis added; *see also* Doc. 6). Plaintiff's appeal of the dismissal of his adversary proceeding was recently dismissed by this Court. See *Carter v. PNC Financial Servs. Grp., Inc.*, Case No. 3:18-cv-283-WHR (Doc. 9, filed May 3, 2019).

The bankruptcy court records, including the summary description attached as an exhibit to CBST's complaint in this case, confirm that CBST had constructive notice of the Bank's claim not later than the date that claim was filed in 2006, if not actual notice prior to Carter's bankruptcy filing. *See* Case No., 3:18-ap-03034 (Doc. 3 at 3).

### b. *Carter v. National City Bank*, Case No 1:17-cv-508-SJD-KLL

In addition to his many filings in bankruptcy court, Carter filed suit in this Court against National City and PNC, alleging that the only debt owed by CBST was a $250,000

18

Note originated in 2003 that the Bank had fraudulently changed to $4 million, and that the Bank had filed a false claim in bankruptcy court for $8.8 million. *See* Case No. 1:17-cv-508 (Doc. 4, Complaint at 1-2, 4, alleging that the "only debt" that "ever existed between PNC and Dynus is a $250,000 Note originated in 2003," and that the $4 million debt "never existed).[8]

Consistent with CBST's complaint here, Carter's prior complaint alleged that "PNC Executives temporarily and fraudulently changed the $250,000 account to make it appear to be a $4,000,000 account…." (*Id.* at 3, ¶¶6, 118; *see also id.* at ¶145, alleging that "in 2004 without Carter's consent and knowledge, PNC unilaterally and deliberately changed the principal amount from $250,000 to $4,000,000.").  Carter alleged a wide-ranging conspiracy by PNC and others to "conceal the fake and bogus" records "purporting to show the existence of a real and authentic existence" of the $4 million loan. (*Id.* at ¶110). Quoting from a *2005* email that is also attached as an exhibit to CBST's current complaint, Carter further alleged that PNC "restructure[d] the [Butler County] transaction to elude the appearance of impropriety," when it "restructured and changed Carter/Dynus's $250,000 account to make it appear that Dynus/Carter had a $4,000,000 account with PNC." (*Id.* at ¶ 113).

Carter's complaint in Case No. 1:17-cv-508 included nearly identical claims to those presented by CBST here, including breach of contract and breach of the covenant of good faith and fair dealing against PNC, civil conspiracy, negligent misrepresentation,

---

[8] The complaint in Case No. 1:17-cv-508 attached similar exhibits to those that CBST relies on herein to support Carter's contention that the only debt that existed between PNC and Dynus was the 2003 Note. (Doc. 4 at ¶¶19-20, ¶21, ¶89, ¶ 92)

fraud, various invasions of privacy (intrusion and seclusion, false light, and misappropriation), violations of 42 U.S.C. §§ 1985 and 1986, and declaratory judgment. Consistent with CBST's current claims, Carter sought to amend to add claims for fraudulent concealment, for tortious spoliation, and for race discrimination under 42 U.S.C. § 1981, (Doc. 40), and moved to supplement concerning an alleged "recent" discovery that National City Bank and PNC "claim he owe $8,810,805.65" in bankruptcy court. (Doc. 43). The damages sought by Carter also were virtually identical to those sought in this case by CBST.[9]

The Court denied Carter's motion to amend as futile, reasoning it would not survive a motion to dismiss. (*See* Doc. 55 at 23-25, Doc. 67). The Court further denied Carter's motion to supplement his complaint to allege that PNC had filed "a $8,810,805.65 fake and false claim" in bankruptcy court, in part because it would be futile to allow Plaintiff to supplement in order to reiterate the substance of claims as to which dismissal had been recommended. (Doc. 55 at 24). Carter subsequently sought to join CBST as a co-plaintiff in Case No. 1:17-cv-508, and the same counsel that represents CBST here filed a Notice of Appearance to acknowledge that he would represent CBST if permitted to join. (*Id.*, Doc. 60). In the motion for joinder, Carter stressed that CBST was the company listed on the 2003 Note signed by Carter, that "[r]ulings by this Court confirm that privity of contract exist[s]" between CBST and Carter, and that CBST "has a claim against the Defendants to the same extent and of the same type as the existing Plaintiff." (*Id.*, Doc. 57 at 1, 5).

---

[9] The similarity of the claims and the allegations in the various complaints filed by Carter and CBST, down to seeking compensatory damages in excess of $500 million and identical typographical errors such as "tremble" rather than "treble" damages, is at least suggestive of a conclusion that Carter, as the owner of CBST, may be driving the instant lawsuit as a means to relitigate previously dismissed claims.

The Court denied Carter's motion to join CBST both because the motion to join CBST was "unduly delayed" since it was not filed until after dismissal of Carter's clams had been recommended, and on the merits, because "the motion for joinder is futile…." (Doc. 64 in Case No. 1:17-cv-508). Neither Carter nor CBST, as a party in interest, filed any objections to the R&R recommending denial of joinder, which was adopted by the presiding district judge on December 19, 2018.

Discussing the futility of joining CBST, Judge Litkovitz reasoned that any possible claims by CBST were subject to dismissal on the merits on the same grounds under which she had recommended dismissal of Carter's claims.

> For the reasons described in the July Report and Recommendation, plaintiff's civil conspiracy, § 1985, § 1986, intentional infliction of emotional distress, negligent infliction of emotional distress and invasion of privacy claims are time-barred by the applicable statute of limitations. (Doc. 55 at 5-8, 11-18). Plaintiff's amended complaint fails to meet Rule 9(b)'s heightened pleading standard for fraud and fails to allege the bare minimum of "who, what, when, where, and how" of the alleged fraud. (*Id*. at 16). Even though plaintiff alleges that CBST has privity of contract with PNC in relation to the $250,000 Note (Doc. 57 at 5), plaintiff's breach of contract claim fails to identify any plausible facts supporting allegations that defendants breached any purported contract by changing the amount owed. (*Id*. at 21). Finally, all three negligence-based claims, even if asserted by CBST, would fail for a lack of duty. (*Id*. at 8-11). Overall, joining CBST as a plaintiff would not change the Court's analysis. Therefore, plaintiff's motion to join CBST as a plaintiff (Doc. 57) should be denied.

(R&R filed 10/25/18, Doc. 64 at 3).

In short, Case No. 1:17-cv-508 provides further support for the rejection, as wholly implausible and not credible, of CBST's present contention that it "first discovered and learned of its injuries via the February 2018 public filing" in bankruptcy court. (Doc. 1, Complaint at ¶167). In addition, the undersigned finds the Court's prior analysis to be

persuasive concerning the identical claims now asserted by CBST.  Finally, based on the privity between Carter and CBST, the undersigned alternatively concludes that the doctrine of issue preclusion and/or claim preclusion prevent CBST from litigating the claims in this case.

### c. *Rogers v. PNC*, Civil Case Nos. 18-cv-825-SJD-SKB and 18-cv-889-SJD; *United States v. Rogers*, Criminal Case No. 1:18-cr-02

In both civil and criminal proceedings, co-conspirator Rogers also previously argued that the $4 million loan guaranty between Dynus/CBST and the Bank never existed.  On April 24, 2019, Judge Dlott filed an identical Order in two civil cases and in Rogers' criminal case: "All of Rogers' arguments in all of these cases are predicated on her contention that because neither the OCC (after requesting it from PNC) nor the United States Attorney's Office can provide appropriate documentation of the $4,000,000 advance more than a decade after it issued, the loan never existed."  *Rogers v. PNC Bank*, 2019 WL 1790987, at *4 (S.D. Ohio April 24, 2019); (Case No. 1:18-cr-02, Doc. 91; Case No. 1:18-cv-825, Doc. 20; Case No. 1:18-cv-889, Doc. 4).

Judge Dlott noted the "many civil cases Carter and Rogers have filed" over the years, including challenges to the existence of the $4 million debt.  In rejecting Rogers' challenges to the existence of the $4 million loan, Judge Dlott summarized some of the evidence previously presented at Carter's criminal trial.  The same evidence is relevant to CBST's latest civil case.

> At Carter's trial, the Government offered Exhibit 3.6 into evidence. Government Exhibit 3.6—as testified by James Smith, General Manager of DC subsidiary CBS Technologies—is the guaranty Smith signed, dated December 31, 2004, by which National City agreed to provide the $4,000,000 wire transfer. (Trial Transcript in Case No. 1:08-cr-51, Doc. 81

at PageID 585–587.) Others involved also confirmed the $4,000,000 advance. (Doc. 132 in Case No. 1:08-cr-51 at PageID 2762–2764; Doc. 79 in Case No. 1:08-cr-51 at PageID 481–483.) Indeed, Carter himself admitted that National City ultimately deposited a total of $6,500,000 into his accounts. (Doc. 134 in Case No. 1:08-cr-51 at PageID 2952.) The jury heard this evidence and convicted Carter on all of the 11 counts charged. (Doc. 75.)

*Rogers v. PNC Bank*, Case No. 1:18-cv-889 (Doc. 4 at 10). The undersigned further agrees with the following analysis, which echoes (and cites to) the Sixth Circuit's analysis in affirming the denial of post-conviction relief to Carter based on his earlier challenge to the existence of the $4 million debt:

> [I]f—in 2017, 2018, or 2019—neither PNC (as successor to National City) nor the United States Attorney's Office produces documentation of the $4,000,000 advance in 2004, it does not prove that the debt never existed. The paperwork could have been lost when PNC acquired National City or destroyed in the regular course of business. The OCC letter on which Rogers relies specifically states, "The loan was a commercial loan and the retention period for this type of loan is 10 years."

*Id.*, Case No. 1:18-cv-889 (Doc. 4 at 11).

### d. *CBST v. United States*, Case No. 1:18-cv-162-SJD-KLL

In March 2018, CBST filed its own civil lawsuit, represented by the same counsel herein, asserting similar claims to those asserted in the instant case, without joining Carter as a co-plaintiff.[10] *See CBST v. United States*, Case No. 1:18-cv-162. In that case, CBST brought claims against the United States Department of Justice ("DOJ"), alleging that the DOJ was violating the Fourteenth Amendment and CBST's civil rights "by publicly and falsely claiming that a certified and authenticated $4,000,000 debt ("debt") was originated…between CBST and PNC Bank…." *Id.*, (Doc. 1 at ¶1). CBST

---

[10] As noted, the same counsel first asserted similar claims on Carter's behalf in his criminal case.

alleged claims for procedural due process, substantive due process, right to privacy, an equal protection violation, and a violation of 42 U.S.C. § 1983. (Doc. 1). CBST further alleged in a proposed amended complaint, in which it sought to add claims under the Federal Tort Claims Act and the Administrative Procedures Act, that DOJ continued to make false statements about its debt. *Id.* (Doc. 31-1 at 6). In its prior case, CBST also sought a temporary restraining order and preliminary injunctive relief to prevent the United States "from claiming that an authentic and certified $4,000,000 debt was originated and thus exists between CBST and PNC." (Doc. 7 at 2).

Exhibits to CBST's proposed amended complaint included the same exhibits upon which CBST relies in this case. (*See* Doc. 31-2). Also notable is that CBST opposed the government's motion to dismiss in part by arguing that CBST is a limited liability company owned by "multiple members including the Dynus Corporation and the Blue Chip Enterprises," (Doc. 22 at 2), which should not be "conflate[d]" with Carter, and that because CBST was not criminally indicted, the United States "did not provide CBST notice or a hearing of its decision" to authenticate the $4 million debt. (Doc. 22 at 3).

On February 19, 2019, Magistrate Judge Litkovitz recommended denying CBST's motion to amend as futile, and recommended granting the government's motion to dismiss Case No. 1:18-cv-162 in its entirety.[11] (Doc. 40, Report and Recommendation ("R&R")). The R&R pointed out that CBST had alleged in part that "the United States Department of Justice 'wrongfully decided that CBST originated a $4,000,000 debt ("debt") with National City Bank [now known as] PNC Bank...." (*Id.* at 3). Reasoning that

---

[11] As it has in the instant case, CBST made a request to convert PNC's motion to dismiss to one for summary judgment in Case No. 1:18-cv-162. (*See* Doc. 22 at 5)

CBST had alleged that the first government action "took place in 2004," the Court held that the statute of limitations on CBST's proposed APA claim began to run in 2004. Similarly, because CBST alleged that its injury (the origination of the debt) occurred in 2004, its FTCA claim was also time-barred. (*Id.* at 4).

CBST did not object to the February 2019 R&R, which was adopted for the opinion of the Court on March 12, 2019. (Doc. 42).

### e. *Carter v. Commissioner Furmon*, Case No. 1:18-cv-400-SJD-SKB

On June 7, 2018, Carter initiated yet another civil case, asserting 24 claims against multiple defendants including PNC executives and employees, attorneys, FBI agents, the bankruptcy trustee assigned to Carter's case, Fifth Third Bank, and various public officials. Consistent with his claims in Case No. 1:18-cv-508 and CBST's claims in this case, Carter sought compensatory damages in excess of $500 million, along with punitive damages, "tremble" damages, and declaratory and injunctive relief. (Doc 1 at 65). The undersigned recommended dismissal for failure to state a claim upon initial screening under the Prison Litigation Reform Act, which requires district courts to "screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel…." *Id.*, 2018 WL 3377148 at *1 (R&R filed as Doc. 24 on July 11, 2018, internal quotation marks and citation omitted). The undersigned reasoned that Plaintiff's claims under *Bivens*, § 1981, § 1983, § 1985, and § 1986 were all barred by the applicable statutes of limitations. All of those claims were "based upon [Carter's] assertion that in convicting him for bank fraud the government relied on a $4 million debt that did not exist." *Id.* at *3. Carter had alleged that his claims

were not time-barred based upon his assertion that he did not learn of the alleged non-existence of the $4 million debt until February 8, 2018, when he received a response to discovery requests from the United States Attorney in Case No. 1:17-cv-248. However, the undersigned pointed out that Carter previously had disputed information in his Presentence Investigation Report as inaccurate based on his contention that "PNC certified records do not show an agreement, contract, or obligation between PNC Bank and Dynus Corporation, which obligated him to pay the $4,000,000.00." *Id.* (internal quotation and citation omitted). Carter had made a similar argument in his criminal case. *Id.* at note 4. The undersigned therefore rejected Carter's implausible allegations that he did not discover the basis for his time-barred claims until 2018. The undersigned recommended dismissal based upon Carter's failure to state any federal claim and further recommended declining supplemental jurisdiction over any possible state claims. The R&R was adopted for the opinion of the Court on March 13, 2019.

### f. *Carter v. PNC Bank*, Case No. 18-cv-706-SJD-KLL

On October 5, 2018, Carter paid the filing fee and initiated Case No. 18-cv-706 against PNC, alleging as CBST does here, that PNC created a fraudulent $18.3 million debt that Carter is now obligated to pay. Multiple motions remain pending in that case.

### III. PNC's Motion to Dismiss

PNC's motion argues that CBST's complaint is deficient as a matter of law under the Rule 8 federal pleading standards, because CBST offers little more than legal conclusions without pleading sufficient factual content to support its claims. PNC additionally argues that ten of the claims are time-barred, and that other claims fail for

other reasons.

As should be clear from the lengthy analysis set forth above, five of CBST's eight key factual allegations have been alleged by Carter and/or by CBST in prior cases. Specifically, Carter and/or CBST previously have argued and alleged that: (1) a $4 million loan between National City Bank (a/k/a "the Bank") and Dynus/CBST never existed, based upon PNC's recent inability to produce documentation to confirm the existence of that loan; (2) the Bank changed the amount of a 2003 Note without CBST's consent from $250,000 to $4 million and misled others regarding the existence of the $4 million debt; (3) the Bank wrongfully sent CBST a demand letter for $4 million; (4) the Bank wrongfully filed one or two 2006 claims in bankruptcy court;[12] and (5) the Bank engaged in "fraudulent concealment" of relevant facts until 2018.   Three additional central allegations were not *fully* set forth in prior cases:  (6) the Bank "currently" is trying to collect the $4 million debt together with another $18.3 million debt from CBST;[13] (7) the Bank failed to apply two payments made by CBST from a Fifth Third Bank account in 2004 to the original $250,000 Note; (8) CBST "recently" sought financing that was denied "based on PNC's false claims…regarding outstanding debts allegedly originated and owed by CBST." Despite the "new and improved" nature of the latter three allegations, the undersigned agrees with PNC that all claims should be dismissed.

---

[12] Carter previously challenged both Claim 10-1 and Amended Claim 10-2 in bankruptcy court. Carter's separate case challenging Claim 10-1 in this Court remains pending.  *See* Case No. 1:18-cv-706.  In Case No. 1:17-cv-508, Carter complained only about the Bank's $8.8 million claim (Amended Claim 10-2).
[13] Some of Carter's prior filings in bankruptcy court, as well as pending Case No. 1:18-cv-706, contain similar but not identical allegations.

## A. Ten Time-Barred Claims and the Assertion of Recent Discovery

CBST concedes that the statutes of limitations would have expired on many claims, but for its allegation that "the operative facts" were not known to CBST "until on or about February 2018" in connection with the filing of the Trustee's final report in its owner's bankruptcy case.[14] (*Id.* at ¶ 110; *see also id.* at ¶¶52, 63, 167, 168). CBST further argues that, under Rule 12(b)(6), this Court must accept as factually true CBST's claim that it "discovered for the first time on February 2018 that PNC publicly and falsely claims CBST has an outstanding debt in the amount of $18.3 million." (Doc. 12 at 12, citing Complaint at ¶52).[15]

CBST is wrong. Just as a court may disregard allegations that are conclusory or delusional under Rule 12(b)(6), so too may a court disregard outlandish and implausible allegations that are readily contradicted by public records of which a court may take judicial notice. CBST's allegation that it first learned of any claim in February 2018, when PNC "publicized" its accusation of a loan to CBST "in the public domain for the first time," (Doc. 1 at ¶63), is simply not credible. CBST cannot plausibly plead ignorance of all prior events and/or of public filings in all prior cases, including in Carter's criminal and bankruptcy cases, until a sudden "discovery" in Carter's bankruptcy case in 2018.

It is undisputed that CBST is owned by Carter, whose criminally fraudulent conduct resulted in the Bank's transfer of $4 million to Dynus/CBST in December 2004 and the

---

[14] CBST repeatedly alleges in this case that the Trustee filed his final report in *February* 2018; however, bankruptcy court records reflect that report was filed on May 23, 2018.

[15] As it did in Civil Case No. 1:18-cv-162, CBST argues here that it "is a distinct and separate legal entity from Carter" that should be entitled to file suit on its own behalf. (Doc. 12 at 2). However, whether CBST can assert independent claims (an open question on the record presented) is quite different than the far more relevant question of when CBST had constructive knowledge of any such claims.

Bank's demand for repayment of that amount shortly thereafter. In addition, as to any claim(s) related to the bankruptcy court filings, PNC correctly notes that its creditor's claim was publicly filed in Carter's <u>2006</u> bankruptcy proceeding. CBST either knew or should have known of the bankruptcy court claims not later than the date on which they were filed. Indeed, the exhibit attached to CBST's own complaint reflects the 2006 filing date (as well as the Bank's amendment of the claim to $8.8 million). Therefore, any claims relating to filings in bankruptcy court claim began to run in 2006. Accordingly, the following ten counts are time-barred for the reasons asserted by PNC and previously discussed by this Court: fraud (Count 6), negligent misrepresentation (Count 14), abuse of process (Count 3), violations of 42 U.S.C. §§ 1981, 1985, or 1986 (Counts 10-12), invasion of privacy and defamation (Counts 8-9), civil conspiracy (Count 7), and tortious interference with a business relationship (Count 15). *Accord, e.g.*, Case No. 17-cv-508 (Doc. 55 at 5-8, 11-18, discussing multiple similar claims barred by applicable statutes of limitations); *id.*, (Doc. 64 at 3, denying leave to for CBST to join because its claims would be similarly barred); Case No. 18-cv-162 (Doc. 40, denying proposed amendment of complaint filed by CBST as futile, reasoning that proposed new claims would be barred by applicable statutes of limitations based on alleged alteration of CBST loan in 2004); Case No. 18-cv-400 (Doc. 24, reasoning that Carter's challenges to existence of $4 million loan were barred by applicable statutes of limitations).

Of course, CBST argues that its claim for "fraudulent concealment" justifies equitable tolling for all other claims. (*Id.* at ¶111). However, for the same reasons that this Court previously rejected Carter's contention that he was entitled to tolling based

upon fraudulent concealment in case No. 1:17-cv-508, and rejected the joinder of CBST

there, so too does the undersigned now reject CBST's virtually identical claims. The

Court's prior analysis of Carter's constructive knowledge applies equally to CBST:

> [P]laintiff has not plausibly alleged that he is entitled to tolling of the statute
> of limitations based upon fraudulent concealment. "To survive a motion to
> dismiss on the ground that a claim is time-barred, a plaintiff relying on the
> doctrine of fraudulent concealment must plausibly plead: (1) the defendant
> wrongfully concealed its actions; (2) the plaintiff failed to discover the cause
> of action before the expiration of the limitations period; and (3) plaintiff
> exercised due diligence." *Burd v. Manley Deas Kochalski PLLC*, No. 2:13-
> cv-593, 2014 WL 12572908, at *2 (S.D. Ohio Mar. 31, 2014) (citing *Lutz v.
> Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013) ). Here,
> plaintiff has failed to plausibly plead that he did not discover the cause of
> action before the expiration of the limitations period or that he exercised due
> diligence. As stated above, plaintiff acknowledges on the face of his
> complaint that he believed PNC claimed a "false" debt against him [and
> Dynus/CBST] as early as 2005 (and he clearly knew about it during his
> criminal trial in 2009). The Court is unpersuaded that plaintiff did not
> discover any wrongdoing until an alleged government investigation in
> November 14, 2016 or January 30, 2017 when he, himself, believed the
> debt to be "false" for over ten years. The Supreme Court of Ohio has stated:
>
> > [C]onstructive knowledge of facts, rather than *actual* knowledge of their
> > legal significance, is enough to start the statute of limitations running
> > under the discovery rule. A plaintiff need not have discovered all the
> > relevant facts necessary to file a claim in order to trigger the statute of
> > limitations. Rather, the "cognizable event" itself puts the plaintiff on
> > notice to investigate the facts and circumstances relevant to her claim in
> > order to pursue her remedies.
>
> *Flowers v. Walker*, 589 N.E.2d 1284, 1287-88 (Ohio 1992) (internal citations
> omitted). Thus, the cognizable event triggering the statute of limitations
> occurred in 2005—the earliest year when plaintiff alleges he first knew of
> the $4,000,000 debt—or in 2008 or 2009—the time of his criminal
> investigation and subsequent trial.

*Carter v. National City Bank*, Case No. 1:17-cv-508, Doc. 55 at 7-8, 2018 WL 3543699,

at *4–5.

## B. Other Implausible or Wholly Incredible Allegations

The undersigned has taken judicial notice of the multiple related motions and lawsuits previously filed by Carter, Rogers, and CBST in part because of the Court's concern with CBST filing yet another civil lawsuit that arises out of the same operative facts. Not only does the Court have concern with CBST's statute of limitations arguments and the factual underpinnings of those arguments as legally and factually unsound, but the complaint appears to contain frivolous legal arguments and factual allegations that arguably violate Rule 11.[16]

For example, CBST alleges that PNC "purports that CBST has an outstanding debt in the approximate amount of $18.3 million" in bankruptcy court, and that PNC "currently seeks to collect purported debts in the approximate amounts of $18.3 million and $4 million from CBST." (Doc. 1 at ¶9). CBST alleges that PNC is claiming that CBST entered into *a separate contract* in the amount of $18.3 million, which contract was entered into in August 2006. (*Id.* at ¶50). CBST repeatedly alleges that PNC is actively seeking to collect $18.3 million from CBST. (Complaint at ¶¶51, 56, 57, 58, 67, 70, 81, 83, 104, 105, 107, 110, 151, 153). It does not appear that there is any evidentiary support for that contention. CBST's own "Exhibit F" refutes its allegations that there was a separate "contract" for $18.3 million that PNC alleges was entered into by CBST in August 2006,

---

[16] Rule 11 requires an attorney who files a complaint in this Court to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the claims and other legal contentions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that the "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 11(b)(2) and (3), Fed. R. Civ. P. On its own initiative, a court "may order an attorney…to show cause why conduct specifically described in the order has not violated Rule 11(b).

as do other publicly available bankruptcy court records. In addition, in an adversary proceeding filed in bankruptcy court, Carter stated that PNC was not pursuing any "legal action against Dynus or Carter seeking payment on a debt in either amount of $18,266,253, $8,810,805.65 or $4,000,000." Case No. 3:18-ap-03034 (Doc. 3 at 3).

For its part, PNC argues that the "$18.3 million debt is a complete fabrication by CBST/Carter; "no such $18.3 million debt - whether fraudulent or otherwise - exists, and PNC is not seeking repayment from CBST." (Doc. 8 at 2-3). As with CBST's allegation concerning the recency of its "discovery" of its claims, public records contradict CBST's allegation that PNC is actively seeking to collect $18.3 million from CBST. The only claim filed by PNC was against Carter, and was filed in 2006.[17] And while Claim 10-1 was originally filed in an amount exceeding $18 million, CBST's own exhibit confirms that amount was amended three days later to $8.8 million. (Doc. 1-1 at 9, Exhibit F).

Additionally, multiple claims rest on the allegation that CBST "recently" sought financing but was denied "based on PNC's false claims in the public domain regarding outstanding debts allegedly originated and owed by CBST." (Complaint at ¶¶24-26, emphasis added, *see also* Doc. 12 at 4). CBST's reference to a "claim" of "$18.3 million" against CBST is problematic enough. Also troubling, however, is the allegation - without reference to a date or to any entity - that CBST "recently" sought financing and was denied "based on" PNC's bankruptcy claim against Carter. Other portions of CBST's complaint imply that Fifth Third was the entity that cut off financing to CBST. (Complaint at ¶¶112-114); (*See also* Doc. 12 at 7-8, arguing in opposition to PNC's motion that "PNC's false

---

[17]CBST does not allege that it ever filed for bankruptcy on its own behalf.

claim that CBST had a debt other than the $250,000 Note caused Fifth Third Bank to terminate its relationship with CBST."). The only other entity asserted to have provided CBST with "financing" is PNC itself. Regardless, both Fifth Third and PNC (or its predecessor, National City) presumably terminated their relationship with Carter and CBST when Carter's fraud was discovered. Alternatively, it would appear that the termination of any relationship with either entity occurred not later than 2006, when the Bank filed a claim against Carter in bankruptcy court. Neither of those years plausibly can be described as "recent."

Other allegations and claims are equally difficult to square with Rule 11, including but not limited to that PNC is in violation of Ohio law as a result of its material misrepresentation and concealment of its $18.3 million claim. (Doc. 1, ¶71, Count 14). The claim fails as a matter of law as well as no its facts. As Judge Litkovitz previously wrote in dismissing a similar claim by Carter:

> "A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction." *Ford v. New Century Mortg. Corp.*, 797 F. Supp.2d 862, 872 (N.D. Ohio 2011) (internal quotation omitted). A debtor-creditor relationship between a bank and its customers "does not give rise to the existence of a duty necessary to maintain a negligent misrepresentation claim." *Id.* at 872-73 (citing *425 Beecher, L.L.C. v. Unizan Bank, Nat'l. Assn.*, 927 N.E.2d 46, 59 (2010) ). Here, because of the lack of duty described above, plaintiff also cannot maintain a negligent misrepresentation claim.

*Carter v. National City Bank*, 2018 WL 3543699, at *6 (S.D. Ohio, July 23, 2018).

Based on the number of implausible allegations and related claims presented in the complaint, the undersigned recommends that CBST's counsel be directed to "show cause" why the specified allegations and claims do not violate Rule 11(b).

33

## D. The Conclusory Nature of CBST's Remaining Claims

The recommended dismissal of ten time-barred claims, as well as the recommended dismissal of CBST's fraudulent concealment and negligent misrepresentation claims, leaves only three remaining causes of action: breach of contract (Count 1); breach of the covenant of good faith and fair dealing (Count 2); and a free-standing claim for relief under Article III of the Constitution that is construed to be aligned with CBST's request for relief under the Declaratory Judgment Act. (Counts 5, 16).

CBST argues that its breach of contract claims are not time-barred, because Ohio law permits a limitations period of 15 years for claims that arose prior to 2012. *See* Ohio R.C. § 2305.06. However, PNC argues that, independent of the relevant statutes of limitations, virtually <u>all</u> of CBST's claims are so conclusory as to fail to meet the "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). With respect to the remaining claims, the undersigned agrees.[18]

CBST's breach of contract claims rest in part upon an allegation that PNC changed the original amount of the 2003 Note executed by CBST ($250,000.00) to $4 million without authorization by CBST. However, CBST has failed to state any <u>plausible</u> claim that PNC unlawfully changed the amount of the Note. Nor does CBST appear to have any nonfrivolous argument for a "breach of the covenant of good faith and fair dealing"

---

[18]In the interests of judicial economy, the undersigned declines to address PNC's arguments that CBST's time-barred claims of negligent misrepresentation, fraud, and 42 U.S.C. § 1985 also are insufficiently pled to state any claim.

under Ohio law. As explained in the Court's review of similar breach of contract and

breach of the covenant of good faith and fair dealing claims filed by Carter in Case No.

1:17-cv-508:

> Plaintiff has also not identified any facts supporting allegations that
> defendants breached any purported contract by changing the amount owed.
> Plaintiff cannot rely on mere legal conclusions or speculation without any
> supporting factual allegations to withstand a motion to dismiss. *Iqbal*, 556
> U.S. at 677. For these reasons, plaintiff's breach of contract claim should
> be dismissed.

> In addition, plaintiff's claim for a breach of the covenant of good faith and
> fair dealing should be dismissed. Ohio does not recognize a separate claim
> for the breach of the covenant of good faith and fair dealing. *McGrath v.
> Nationwide Mut. Ins. Co.*, 295 F. Supp.3d 796, 808 (S.D. Ohio 2018)
> (citing *Frisch v. Nationwide Mut. Ins. Co.*, 553 Fed.Appx. 477, 482 (6th Cir.
> 2014) (although Ohio law recognizes the existence of an implied duty of
> good faith and fair dealing in every contract, "the duty does not create an
> independent basis for a cause of action.") (internal citations omitted)).

*Carter v. National City Bank*, 2018 WL 3543699, at *11 (S.D. Ohio, 2018). CBST's

allegations here are equally conclusory and/or contradicted by public records. Therefore,

the undersigned concludes, as it previously did in denying Carter's attempt to join CBST

so that CBST could assert identical claims: "Even though plaintiff alleges that CBST has

privity of contract with PNC in relation to the $250,000 Note…, plaintiff's breach of contract

claim fails to identify any plausible facts supporting allegations that defendants breached

any purported contract by changing the amount owed." *Id.*, 2018 WL 5303917 at *2.

CBST argues that it can maintain a separate breach of contract claim based upon

newly asserted allegations that it made two payments on its original $250,000.00 Note in

September and October 2004, but that the Bank did not receive those payments[19] (and

---

[19] The undersigned assumes that CBST is alleging that National City failed to apply the two payments.
CBST alleges that National City acquired the assets of Provident Bank (the originator of the 2003 Note) "on

ultimately PNC) failed to apply them to reduce CBST's original $250,000 Note. (Doc. 1 at ¶¶3, 27, 28). However, the additional allegations remain insufficient to state any plausible breach of contract claim.

As PNC points out, CBST's complaint identifies only the origination date of the 2003 loan and the amount borrowed. The complaint notably omits the actual terms of the 2003 loan as well as the specific terms allegedly breached by PNC. The copy of the $250,000 Note attached as an exhibit to the complaint makes clear that it is based upon and incorporates terms of a prior Agreement, but also states that CBST, as Borrower, "consents to any and all delays, extensions, renewals or other modifications of this Note or waivers of any term hereof or the failure to act on the part of Agent or Lender or any indulgence shown by Agent or Lender, from time to time and in one or more instances (without notice to or further assent from Borrower…." (Doc. 1-1 at 1).[20] While the complaint is not a model of clarity, CBST appears to be alleging that PNC may have applied the September and October 2004 payments toward the $4 million loan guaranty. (*See* Doc. 1 at ¶ 40, alleging that "PNC restructured transactions and applied CBST payments to an account in the name of Butler County, Ohio without CBST's consent."). Given the history of this case and the multiple civil and criminal cases in which this Court and the Sixth Circuit have acknowledged the existence of a $4 million loan guaranty made by Dynus/CBST and PNC's demand for return of those funds, the undersigned finds

---

or about 2004," but does not alleged when in 2004 that occurred. (Doc. 1 at ¶28). For purposes of the pending motion, the identity of the bank that allegedly failed to apply CBST's two payments is immaterial.
[20] Plaintiff's lack of specificity is all the more notable considering CBST is alleging some form of breach based upon an alleged error or malfeasance by an unidentified predecessor bank nearly 15 years after the relevant events took place.

CBST's failure to include more specific allegations to be sufficiently glaring as to warrant dismissal.[21]  Likewise, any related cause of action based upon the implied covenant of good faith and fair dealing should be dismissed as overly conclusory and for failure to state any claim.

CBST's request for relief under the Declaratory Judgment Act (Count 5), construed to be based upon its claim for Article III Relief (Count 16), also should be dismissed as overly conclusory and failure to state a claim.  CBST alleges that an actual controversy exists "regarding the origin of purported debts in the amounts of $4 million and $18.3 million."  (Doc. 1 at ¶¶178-179).  In Count 5, CBST seeks a declaratory judgment that "[t]he only debt originated between CBST and PNC is a $250,000 Amended Note originated in 2003" and that "CBST did not commit nor conspired [sic] to commit a fraud or any other crime upon PNC." (*Id.* at ¶133).

For the reasons previously discussed, there is no plausible basis for CBST's allegation that PNC is pursuing a $18.3 million "debt" against CBST.  The undersigned further concludes that CBST has failed to state that any justiciable case or controversy arises from the  $4 million loan guaranty or allegedly unauthorized "change" in the amount of CBST's 2003 Note.  Although CBST alleges it was "recently" denied financing, it fails to identify either a year or the entity that denied it financing or any other salient facts.  Not only is the claim overly conclusory, but CBST's attempt to tie it to a 2006 filing in Carter's bankruptcy court case is untenable.

---

[21] Should any reviewing court disagree, the undersigned alternatively would recommend dismissal because CBST's failure to allege the amount of the payments to be credited suggests a lack of the requisite amount in controversy in order for this Court to exercise diversity jurisdiction over this remaining claim.

For the same reasons, CBST's request for an "Emergency Temporary Restraining Order" (Count 4) must be denied. Like much of CBST's complaint, the request is based upon overly conclusory and wholly incredible allegations. Neither declaratory nor injunctive relief is appropriate to prevent "harm" that is alleged to have occurred 13 years ago. In fact, CBST does not bother to contest PNC's motion to dismiss this claim in its opposing memorandum. For the reasons stated by PNC, (*see* Doc. 8 at 16-17), CBST has failed to set forth any basis for such extraordinary relief.

### E. Issue Preclusion and/or Claim Preclusion

In addition to the grounds upon which PNC chiefly relies, the undersigned concludes that the doctrines of issue preclusion (also known as collateral estoppel), and/or of claim preclusion[22] bar the current lawsuit. To be fair, PNC has not fleshed out this affirmative defense. On the one hand, PNC has pointedly characterized the instant case as "the most recent of six lawsuits filed to date by Carter or his associates" and that the current complaint "asserts essentially the same claims as those set forth in Carter's previous lawsuits against PNC and in the lawsuit filed by Carter's alleged co-conspirator Mary Rogers." (Doc. 8 at 2) However, PNC's motion fails to move beyond superficial references to the doctrines. Still, the undersigned concludes that it is enough. CBST also will have an adequate additional opportunity to respond through the filing of any objections to this Report and Recommendation.

---

[22] In *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984), the United States Supreme Court expressed its preference for usage of the terms "issue preclusion" and "claim preclusion" to refer to the preclusive effect of a prior judgment, rather than the more common terms of "collateral estoppel" and "res judicata." The Sixth Circuit has expressed the same preference, *Heyliger v. State University and Community College Sys. of Tenn.*, 126 F.3d 849, 851-52 (6th Cir. 1997), although the Latin phrases remain widely used.

Even if PNC had not raised the issue, the undersigned would find support for the

*sua sponte* consideration of the issue under the "special circumstances" presented by this

case. As another district court recently explained:

> [T]he Supreme Court has indicated that a court may take the initiative to assert the res judicata defense *sua sponte* in 'special circumstances.' " *Hutcherson v. Lauderdale Cty., Tennessee*, 326 F.3d 747, 757 (6th Cir. 2003) (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000), *supplemented*, 531 U.S. 1 (2000)). "Most notably, if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona*, 530 U.S. at 412 (internal quotation marks and citations omitted). The Court finds that this case involves just such "special circumstances." The Court is on notice that the Western District has previously decided the issue presented. Therefore, and consistent with the policy of avoiding unnecessary judicial waste, the Court finds it appropriate to *sua sponte* raise and apply issue preclusion in this case.

*Pogue v. Principal Life Insurance Company*, 2019 WL 1427554, at *6 (W.D.Ky., March

29, 2019).

Because CBST is a limited liability company owned by Carter, there can be no

doubt that Carter and CBST are in privity, such that prior litigation involving identical

issues should bind CBST even where CBST was not a named party. *See generally*

*Montana v. United States*, 440 U.S. 147, 154 (1979); *see also Fin. Fed. Credit Inc. v.*

*Smith*, 2005 WL 2121556 at *5 (S.D. Tex. Aug. 31, 2005) (finding "little difficulty" in

concluding that individual defendant was in privity with limited partnership for purposes of

adverse bankruptcy judgment, where the individual was the general partner and a

guarantor of the limited partnership's obligations on a note). All other elements of issue

preclusion appear to have been met in this case as to the vast majority of the claims that

CBST attempts to present. Because the prior litigation at issue took place in federal court, the doctrines of issue preclusion and claim preclusion should be interpreted under federal law rather than state law. *See J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213-214 (6th Cir. 1996). However, Ohio law and federal law both preclude relitigation of any issue previously litigated, even if based on a different cause of action. *See, e.g., In re Trost*, 510 B.R. 140, 150-151 (W.D. Mich. 2014); *State ex rel. Nickoli v. Metroparks*, 124 Ohio St. 3d 449, 453, 923 N.E. 2d 588 (Ohio 2010). Although the undersigned concludes that issue preclusion applies to identical issues that have been previously litigated, claim preclusion (the foreclosure of issues that have not been litigated but should have been advanced in an earlier suit) also arguably bars most if not all of CBST's "new" claims. *See generally O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 862 N.E.2d 803, 806 (Ohio 2007).

### IV. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the PNC Defendants' motion to dismiss this case in its entirety (Doc. 8) be **GRANTED** and that this case be dismissed and closed. **IT IS FURTHER RECOMMENDED THAT** Plaintiff's counsel be directed by separate Order to "show cause" why the filing of certain allegations and claims in this case did not violate Rule 11(b).

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CBST ACQUISITION, LLC,

        Plaintiff,

   v.

PNC BANK, N.A., et al.,

        Defendants.

Case No. 1:19-cv-06

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).